*Leo THOMPSON*
Appellant
*vs.*
*Delores GREYEYES*
Director, Navajo Department of Corrections

In the Supreme Court of the Navajo Nation

No. SC-CV-29-04
May 24, 2004

478

R. Linda Riley, Esq., Crownpoint, Navajo Nation, for Petitioner.

Genevieve Woody, Esq., Victoria Yazzie, Esq., and Roger Shirley, Esq., Window Rock, Navajo Nation, for Respondent.

Before BATES ARTHUR, Chief Justice, and FERGUSON and SLOAN, Associate Justices.

Opinion delivered by BATES ARTHUR, Chief Justice.

This matter arises out of a petition for a writ of *habeas corpus*. We previously ordered the immediate release of Petitioner, and we set forth the grounds for that release in this opinion.

I

The facts are taken from the pleadings and record before us. The Crownpoint Family Court issued a domestic abuse protection order against Petitioner. He violated the protection order and the Office of the Prosecutor filed a criminal complaint with the Crownpoint District Court for the offense of interfering with judicial proceedings (docket no. CP-CR-03-001175 (hereinafter complaint)). After the district court twice issued criminal summons to Petitioner to appear and answer the complaint, the court issued a bench warrant for failure to appear. The court assigned a different docket number to the bench warrant, no. CP-CR-00243-04 (hereinafter warrant). The warrant was executed and Petitioner was arrested. He appeared before the court on March 24, 2004 and pled guilty to the charge in the complaint: interfering with judicial proceedings. The Judgment and Mittimus issued on March 24, 2004 sentenced Petitioner to jail for 90 days and to a fine of $250. Petitioner apparently also pled guilty to the bench warrant. The prosecutor did not file a criminal complaint for this separate offense. The Judgment and Mittimus issued sentenced Petitioner to 30 days and a fine of $250 for interfering with judicial proceedings, and ordered that he serve the 30 days after his sentence ended in CP-CR-03-001175. Taken consecutively, Petitioner was sentenced to 120 days in jail pursuant to two guilty pleas of violating 17 N.N.C. § 477.

Petitioner filed a Petition for Writ of *Habeas Corpus*, contending he was being illegally detained. The Chief Justice issued the writ to Respondent in her official capacity as Director of the Navajo Department of Corrections. The Chief Justice also issued an order inviting the Office of the Prosecutor to file a response to the petition. This Court held a hearing on May 10, 2004. After arguments, the Court ordered that Respondent immediately release Petitioner.

## II

As a threshold matter, we believe it is necessary to clarify our procedure for writs of *habeas corpus* in cases involving incarcerated criminal defendants. Confusion arose in this case and in previous habeas cases that requires us to explain how *habeas* petitions are filed, against whom the writ runs, and what procedure this Court uses in considering a writ of *habeas corpus*.

We previously have stated that Rule 26 of the Navajo Rules of Civil Appellate Procedure (NRCAP) governs writs of *habeas corpus*. *Stanley v. Navajo Nation*, 6 Nav. R. 284, 284 (Nav. Sup. Ct. 1990). Rule 26 primarily concerns writs against courts or officials to restrain actions taken outside their jurisdiction (prohibition) or to compel action required by law (mandamus). *See* NRCAP 26(a). The rule does not mention *habeas corpus*. Rule 26(d) states that petitions for writs other than mandamus and prohibition "shall conform so far as practicable, to the procedures [for those writs]." There are several requirements in Rule 26 concerning service, payment of filing fees, and the necessary facts to be included in a petition that are difficult, if not impossible for a petitioner to comply with when the defendant is an incarcerated criminal defendant. *See id*; Rule 26(b). We therefore must decide what procedure petitioners should follow that reflects a prisoner's inability to access records, money for filing fees, and other resources due to their incarceration.

Though located in rules that only apply to criminal cases,[1] Rule 14 of the Appellate Rules provides a specific procedure for habeas writs that takes into consideration the difficulties incarcerated defendants may have in filing petitions. Based on our authority under Rule 26(d), we hereby adopt the procedures found in Rule 14 of the Appellate Rules for writs of *habeas corpus* involving incarcerated criminal defendants.

We now lay out the proper procedure for incarcerated criminal defendant writs. A petitioner does not have to pay a filing fee, but only needs to file the petition with the Supreme Court. NRAP 14(b). The respondent to a *habeas corpus* petition is not the court who ordered the detention,[2] but "the person having

[1] The Rules of Appellate Procedure had been our rules for both civil and criminal appeals. With the adoption of the Navajo Rules of Civil Appellate Procedure in 1987, the Rules of Appellate Procedure only apply to criminal cases.

[2] Though a writ in incarcerated criminal defendant situations in effect challenges the actions of the district court in the underlying case, the court itself is not a party.

custody of the person." *Id.* That person is the Director of the Department of Corrections (Director). The Chief Justice reviews the petition, and may issue the writ if "in proper form." *Id.* The writ of *habeas corpus* itself does not order the release of the petitioner, but merely directs the Director "to appear in the [Supreme Court] on a certain date and bring the detained person with him [or her] and show cause why the person should not be released." *Id.* In other words, the writ is the equivalent of an order to show cause, and the Director must bring the petitioner with her and respond to the petition by demonstrating that the petitioner is lawfully detained. The burden of proof in a *habeas* case therefore shifts once the Chief Justice issues the writ. The petitioner initially has the burden to establish facts showing his illegal detention. *In re Application of Johnson*, 6 Nav. R. 186, 187 (Nav. Sup. Ct. 1990). Once shown, the petition is in "proper form," and when the Chief Justice issues the writ the Director must show that the petitioner's detention is legal.[3]

## III

The issue in this case is whether incarceration for the offense of interfering with judicial proceedings is legal. We agree with petitioner that a jail sentence under 17 N.N.C. § 477 is illegal.

## IV

Petitioner argued in his petition and at the hearing that he was wrongfully incarcerated because the offense for which he was convicted in both docket numbers does not authorize jail time. District courts have been given broad discretion to craft criminal sentences that may best rehabilitate defendants and which serve the reasonable needs of the victims and the community. *See* 17 N.N.C. §§ 220-225. However, the court's discretion is necessarily limited to the specific sentence or sentencing range stated in the Code. A jail sentence rendered outside the authority of a district court is cruel and unusual punishment under the Navajo Bill of Rights. *Martin v. Antone*, 8 Nav. R. 346, 349 (Nav. Sup. Ct. 2003); *Johnson v. Navajo Nation*, 5 Nav. R. 152, 153 (Nav. Sup. Ct. 1987); *Navajo Nation v. Jones*, 1 Nav. R. 14, 18 (Nav. Ct. App. 1971). This Court may remedy such violation of Petitioner's civil rights under a writ of *habeas corpus* by releasing him from his illegal detention.

The issue depends on the language of the Navajo Nation Criminal Code. The Navajo Nation Council amended the Code in 2000. Resolution No. CJA-08-00 (January 7, 2000). The plain language of the revised section concerning the offense of interfering with judicial proceedings only allows the district court to order *nályééh*, a peace or security bond, and/or a sentence of labor or community

---

3 The Director may choose who represents her in the *habeas* proceeding, whether the Office of the Prosecutor or the Human Services and Government Unit of the Navajo Department of Justice, or both.

service. 17 N.N.C. § 477(B) (as amended by Resolution No. CJA-08-00).[4] The district court's jail sentence was clearly outside of its discretionary boundaries, and amounts to legislating from the bench. That is impermissible. The district court therefore lacked the authority to incarcerate Petitioner under either docket number for interfering with judicial proceedings.

At the hearing, the Office of Prosecutor argued that incarceration under the complaint in CP-CR-03-001175 was nonetheless authorized because the underlying protection order included the threat of incarceration if Petitioner violated the order. First, we do not know whether this is true. Though the prosecutor mentioned the protection order several times in her oral argument, she never submitted a copy of the order to this Court, nor was one included in the record before us. Even assuming the protection order does include such language, a statement in a protection order cannot override the clear mandate of the Council prohibiting the district court from incarcerating a defendant for interfering with judicial proceedings.

Throughout its argument the Office of the Prosecutor either confused or intentionally conflated two separate methods of dealing with violations of protection orders: 1) criminal prosecution by the district court, and 2) criminal contempt by the family court. *See* 9 N.N.C. § 1663. If a respondent in a Domestic Abuse Protection Act (DAPA) case violates a protection order, the family court or the police department may refer the incident to the prosecutor for criminal prosecution. 9 N.N.C. § 1663(A)(l), (2). The family court however lacks jurisdiction to hear a criminal case, meaning the prosecutor is required to file the criminal complaint in the district court. 9 N.N.C. § 1651(A)(1). DAPA defines a violation of a protection order as the criminal offense of interfering with judicial proceedings. *Id.* The Prosecutor initially charged Petitioner with that offense in the complaint, citing 17 N.N.C. § 477 as the offense. Criminal Complaint, CP-CR-03-001175. There is an alternative procedure, whereby any "person" who believes the respondent has violated a protection order can move the family court for an order to show cause. 9 N.N.C. § 1663(B)(1). After a hearing, held within fifteen (15) days after the order to show cause is issued, the family court can hold the respondent in criminal contempt upon a finding beyond a reasonable doubt that he or she violated the order. 9 N.N.C. § 1663(B)(3). DAPA authorizes the family court to incarcerate the respondent for up to one hundred and eighty days and/or fine him or her $250. *Id.*

While these remedies may be used separately to enforce a protection order, the district court cannot use the threat of incarceration in a family

---

4 Even if the plain language was not enough and the language were considered ambiguous, requiring reliance on legislative intent, the exhibit to Resolution CJA-08-00 shows that the Council specifically eliminated the pre-existing sentence of up to 90 days or a fine of up to $250 or both. Interestingly, the district court sentenced Petitioner to 90 days and a fine of $250, suggesting it followed the old sentencing guideline found in the previous version of 17 N.N.C. § 477.

court protection order to sentence the respondent for a criminal offense. If the protection order includes a threat of incarceration, the plain language of DAPA only allows it to be enforced through the family court as criminal contempt. The roles and powers of the district court and family court in DAPA cases are clearly separate. Under DAPA the district court only has jurisdiction to enforce a protection order through prosecution for interfering with judicial proceedings under 17 N.N.C. § 477. *See* 9 N.N.C. §§ 1651(A)(1); 1663(A). As the respondent is charged under 17 N.N.C.§ 477, the district court must follow the Criminal Code's sentencing provisions for that offense, even in DAPA situations. Nothing in DAPA allows the district court the additional authority to reach beyond the sentencing restrictions in Section 477 merely because the offense arose out of the violation of a protection order.

Even if we were to accept the prosecutor's construction, we must interpret DAPA consistent with *Diyin Nohookáá Diné'é Bi Beehaz'áanii* (Navajo Common Law). *See Fort Defiance Housing Corp. v. Lowe*, 8 Nav. R. 463, 473 (Nav. Sup. Ct. 2004); Navajo Nation Council Resolution No. CN-69-02, § 6(B) (November 13, 2002) (recognizing the Fundamental laws of the *Diné* and requiring that the written laws be "interpreted in harmony with *Diné* Common Law"). Fundamental notions of fairness in our Common Law, articulated in our opinions as Navajo due process, *e.g., Lowe*, 8 Nav. R. 463, require that the respondent have notice of the available sentencing options before he or she pleas to an offense. A respondent who reads the complaint indicating Section 477 as the source of the Navajo Nation's authority to punish him or her and who then reviews Section 477 is justified in believing that a plea of guilty will not lead to incarceration, as the plain language prohibits jail as punishment. His or her decision to plea may be affected by the absence of jail time. Under the prosecutor's interpretation, a district court could impose a post-plea sentence not provided for in the description of the offense itself, as long as it appears in the family court's protection order. To avoid a patently unfair result, we reject an interpretation of DAPA that would be inconsistent with our Common Law values of due process and fundamental fairness.

Based on the above, Petitioner was detained illegally, and we had the authority to release him under the writ, as the district court clearly arraigned Petitioner for violation of 17 N.N.C. § 477. Under both docket numbers,[5] he was

5 The prosecutor asserts that docket CP-CR-00243-04 clearly was a contempt case and the reference to interfering with judicial proceeding was "obviously" a "typo error" and therefore "harmless." Response to Petitioner's Writ of *Habeas corpus* at 6. We have discussed above that the district court cannot hold a respondent in criminal contempt for violation of a protection order. Further, even if there was such authority, everything on the face of the judgment indicates this was a criminal conviction. The Prosecutor failed to provide any evidence in the form of a tape of the proceeding or transcript to show that the actual proceeding was a contempt hearing, and therefore we treat it as a criminal proceeding for the offense of interfering with judicial proceedings.

illegally detained under both convictions at issue in the petition and should be released.[6]

## V

Based on Petitioner's illegal detention, we released Petitioner. The effect of the release is that the sentences of incarceration under both docket numbers are VACATED.

---

6 Petitioner also presented an issue concerning the District Court's initiation of criminal proceedings in CP- CR-00243-04 without a complaint by the Office of the Prosecutor. As the above discussion disposes of this case, and the remedy of reversing the conviction is beyond our authority under a habeas writ, we make no disposition.