*In the Matter of*
*H.M., a minor*
Petitioner
*vs.*
*Delores GREYEYES*
*Director, Department of Corrections*
Respondent

In the Supreme Court of the Navajo Nation

No. SC-CV-63-04

October 13, 2004

574

R. Linda Riley, Esq., Crownpoint, Navajo Nation, for Petitioner.

Loritta Johnson, Esq., Crownpoint, Navajo Nation, for Respondent.

Before FERGUSON, Acting Chief Justice, and JOHNSON and SLOAN, Associate Justices.

Opinion delivered by FERGUSON, Acting Chief Justice.

This case concerns the procedure and scope of a writ of *habeas corpus* in juvenile cases. We previously released the child from detention, and now issue this opinion to explain that decision and the procedures and scope of relief for a juvenile *habeas corpus* petition.

I

The child in this case is the subject of consolidated child in need of supervision (CHINS) and delinquency cases pending in the Crownpoint Family Court. Navajo Nation Division of Social Services (Social Services) took her into custody from her legal guardian on June 3, 2004. Social Services placed her at the Sunrise Home for Youth in Crownpoint. The Navajo Nation filed an ex parte motion for temporary custody and a petition for adjudication of a child in need of supervision on June 9, 2004. The Crownpoint Court granted temporary custody. At a detention hearing on June 16, 2004 the Court vested legal custody of the child with Social Services and physical custody with Sunrise Home for Youth "until further order of the court." Detention Preliminary Hearing Order at 1.

While at the Sunrise Home for Youth, an incident occurred that resulted in the child being moved to the Chinle Youth Detention Facility. Based on an altercation with another child and a Navajo Nation police officer, the Navajo Nation Office of the Prosecutor filed a petition for adjudication of a delinquent child. The petition alleged the child had committed the offense of Disorderly Conduct, as defined by the Navajo Nation Criminal Code. *See* 17 N.N.C. § 483(A)

(2). The prosecutor filed a motion for further detainment, asking that the Court detain the child at the Chinle detention center. After a detention hearing the court on July 7, 2004 ordered that the child be detained at the detention center. Due to several continuances, the child was still at the detention center pending an adjudicatory hearing when she filed her petition for *habeas corpus* on September 28, 2004.

Based on our review of the petition, and arguments from the parties, we released the child on October 5, 2004. The child's petition sought her release from the Chinle Youth Detention Center and the dismissal of the pending CHWS and delinquency cases. The Chief Justice of this Court issued a writ of *habeas corpus* on September 29, 2004 ordering Respondent to bring the child before the Court. We held a hearing on October 5, 2004. Based on the (eventual) concession of the Office of the Prosecutor that the original CHINS petition was untimely filed pursuant to 9 N.N.C. § 1113(A), we released the child.[1]

## II

The issue in this case is what procedure and relief is appropriate for a writ of *habeas corpus* in a juvenile proceeding.

## III

In this case Petitioner sought several types of relief in her petition for a writ of *habeas corpus*. She asked that this Court release her from detention at the Chinle Youth Detention Center, and that this Court dismiss the CHINS and delinquency cases filed in the Crownpoint Court. At the hearing we released her from detention, but declined to rule on the dismissal of the lower court cases. We take this opportunity to clarify the procedure and scope of a writ of *habeas corpus* in a juvenile case. We consider the procedure and scope in turn.

### A

Rule 26 of the Navajo Rules of Civil Appellate Procedure (NRCAP) governs writ practice in the Navajo Nation. Even though habeas writs can arise out of criminal cases, all writs are classified as civil in this Court. Rule 26(a) lays out specific procedures and requirements for filing writs of mandamus and prohibition. Though *habeas corpus* is not explicitly included in Rule 26, the rule states that "[pletitions for extraordinary writs, other than for mandamus or prohibition, shall conform so far as practicable, to the procedures prescribed in [Rule 26(a)]." Rule 26(d).

We recently clarified the procedure under Rule 26 for a habeas case

[1] The child presented several other arguments in her petition. We found it unnecessary to consider them, as the violation of the timing requirement for filing the petition was enough to release her. However, we note some concern over the actions of the Crownpoint Family Court in this case, particularly statements made at each detention hearing concerning the need for the child's anti-depressant medication while in detention.

concerning an incarcerated adult criminal defendant. *Thompson v. Greyeyes*, 8 Nav. R. 476 (Nav. Sup. Ct. 2004). In *Thompson* we applied the procedure from Rule 14 of the Navajo Rules of Appellate Procedure, the rules that now only apply to criminal appeals, as the appropriate approach to incarcerated defendant situations. *Id.* at 3. We did so because the lack of prisoner access to resources to prepare a writ required us to recognize a different procedure from mandamus and prohibition. *Id.* As laid out in Thompson, an incarcerated person seeking release from illegal detention files a petition for a writ of *habeas corpus. Id.* 484–85. If the allegations in the petition establish illegal detention, the Chief Justice issues the writ and scheduless a hearing for the person holding the prisoner (the respondent) to show cause why the prisoner should not be released by the Court. *Id.* If the allegations do not establish illegal detention, the Chief Justice denies the writ. If, at the hearing, the respondent fails to refute the allegations establishing illegal detention, the Court releases the prisoner. *Id.* The question is whether the *Thompson* procedure governs habeas cases involving detained juveniles.

To answer that question, as Rule 26 is not clear, we look to *Diyin Nohookáá' Dine'é Bi Beehaz'áanii*, or Navajo Common Law principles on the status of children. *See Dale Nicholson Trust v. Chavez*, 8 Nav. R. 417, 424 (Nav. Sup. Ct. 2004) (recognizing use of Navajo Common Law to interpret rules). We recognize that children are a unique group of people in Navajo cultural thinking. They are precious above all else, and are a blessing to Navajo people. *In re A.W.*, 6 Nav. R. 38, 43 (1989). Due to their importance in Navajo society, children's rights are protected like the rights of adults. *Id.* Under these principles we have held that the police, Social Services, and the courts must strictly comply with the procedures in the Children's Code to take children into custody and keep them detained pending disposition of juvenile cases. *Id.* If agents of the Navajo Nation fail to follow these requirements, we recognize, at the very least, the same right of a juvenile to seek release from illegal detention under a writ of *habeas corpus*.

However, based on our recognition of the unique needs of children, we alter the *Thompson* procedure in one significant area. As we have previously recognized, the strict guidelines for detention of children reflect that a child is not yet fully emotionally mature. *A.W.*, 6 Nav. R. at 41. Children taken into custody "experience a gamut of emotions from fear to embarrassment to anger." *Id.* Problems that may result are violent confrontations with other children or staff of a facility or infliction of mental or physical abuse on themselves. Indeed, suicide may result from the conditions of detention. *Id.* While these reactions may also occur with adult prisoners, children are especially susceptible to them. Therefore, we recognize that this Court may release a child based on the petition itself, on the day of the filing of the petition, without the necessity of the writ and hearing required by *Thompson*. The Chief Justice, instead of issuing a writ, may, in her discretion, convene the Court immediately. The Court then may release the child without a hearing, as long as all the justices agree and the reasons are plain in the release order. However, if all three Justices do not agree

that the child should be immediately released, the Chief Justice will issue a writ and set a hearing, and the regular *Thompson* procedures will apply.

### B

Having set out the procedure for a juvenile habeas petition, we now consider the scope of relief we will grant. Writs are an important method to receive immediate relief from illegal actions of trial courts. However, because they interfere with the management of cases in the lower courts, this Court must narrowly define the scope of relief we grant, so that we can maintain the proper division of work and the relationship between the trial courts and this Court. Further, as this Court has clearly divided writs into discrete types, we must retain those divisions, and recognize specific purposes for each type. We consider the proper scope of a habeas writ under these principles.

The Anglo-American device of *habeas corpus* releases a person from illegal detention. The literal Latin phrase *"habeas corpus"* means "that you have the body." Black's Law Dictionary 715 (1999). Its purpose is to bring a person before a court to ensure that the person's imprisonment is not illegal. *Id.* Though we have adopted this device from Anglo-American law, we are, of course, not bound by outside practices. *See Fort Defiance Housing Corp. v. Lowe*, 8 Nav. R. 463, 474–75 (Nav. Sup. Ct. 2004). However, given the principles discussed above, this Court adopts a narrow view of the relief we can grant under the expedited procedures of habeas petitions. We clarify here, for juvenile cases, and generally in other habeas cases, that the only relief we will grant is release from illegal detention. We will not grant dismissals of cases or the vacating of convictions. Those types of relief are appropriately dealt with by other writs, such as mandamus, prohibition, or superintending control, where the trial court is an actual party and is allowed to respond to the petition. Such relief may also be appropriate through the regular appeals process, when a full record is submitted and the parties are allowed more time to prepare their arguments on the merits of the underlying case.

### III

Based on the above, we released the child, but did not dismiss the pending cases in the Crownpoint Family Court. The child may seek relief from the CHINS and delinquency cases in the Crownpoint Family Court, or at this Court through an appropriate petition for relief.