OPINION

This case concerns a petition for habeas corpus based on alleged violations of an *740 incarcerated criminal defendant’s rights to due process and a speedy trial.
I
The facts are taken from the petition of Myron Seaton (Seaton) and the record supplied by the Kayenta District Court (District Court). Seaton was arrested on August 19, 2005 on a charge of incest. For various reasons, as described below, see Section IV, supra, the District Court continued his case seven times. With each continuance, the District Court issued a temporary commitment order to keep Seaton incarcerated until the next hearing. All of the temporary commitment orders except one do not specify a reason for the continued detention, but only indicate that “good cause” had been shown. One temporary commitment order states that Seaton would be committed “due to the serious nature of the offense.” Order for Temporary Commitment of the Defendant, November 23, 2005, ¶ 2. The District Court appointed a guardian ad litem (GAL) for the alleged minor victim, who filed several motions and responses in opposition to other motions in the case.
Seaton filed a pro se petition for a writ of habeas corpus with this Court on February 3, 2006. The Court held oral argument on February 10, 2006. At the argument, the Navajo Nation Public Defender’s Office represented Seaton. Based on the arguments, the Court released Seaton that day. The Court now gives its opinion for that release.
II
The issues in this appeal are 1) whether the District Court violated Seaton’s right to due process when the only reason given in the temporary commitment orders for his continued detention was that his offense was serious, and 2) whether a dela\ of 172 days violates Seaton’s right to: a speedy trial when the delay was caused by multiple continuances, including a continuance to allow the GAL to file a pleading.
Ill
A habeas corpus proceeding allows this Court to review whether a person is being illegally detained. If, based on the allegations in the defendant’s petition, the Chief Justice believes there is reasonable likelihood of illegal detention, the Chief Justice issues the writ to have the defendant produced to the Court. See Thompson v. Greyeyes, 5 Am. Tribal Law 400, 402-03, 2004 WL 5658108, at *2 (Nav. Sup.Ct.2004). Detention is illegal if the court who ordered the detention violated that person’s rights under the Navajo Nation Bill of Rights. See, e.g., id., at 404-05. 2004 WL 5658108, at *4 (violation of right against cruel and unusual punishment); Martin v. Antone, 4 Am. Tribal Law 666, 667, 2003 WL 25794139, at *1 (Nav.Sup.Ct. 2003) (same); Pelt v. Shiprock District Court., No. SCCV-37-99, slip op. at 6-7 (Nav.Sup.Ct. May 4, 2001) (violation of right to liberty). The writ simply order-the person holding the defendant to appear before the Court, as the Court may not release the defendant without a hearing before three justices. See Thompson, at 402-03, 2004 WL 5658108, at *2; Navajo Rules of Appellate Procedure, Rule 14(d).[1] At the hearing, the responden i, here the Director of the Navajo Department of Corrections, must justify the de *741 tention. Thompson, at 404-05, 2004 WL 5(558108, at *4. If the detention is not justified, the remedy is the defendant’s release from the illegal detention. In re H.M., 5 Am. Tribal Law 454, 457, 2004 WL 5058523, at *3 (Nav.Sup.Ct.2004).
IY
Petitioner’s counsel at oral argument contended that Seaton’s detention was illegal because the temporary commitment orders give no reason for the continued detention, other than one reference to the "seriousness” of the offense. Taking away his liberty through these temporary commitment orders, Seaton’s counsel argued, violated Seaton’s right to due process under the Navajo Bill of Rights. 1 N.N.C. ,⅜ 3 (2005).
: Rule 15(d) of the Navajo Rules of Criminal Procedure sets out the reasons that justify detention pending the outcome of a criminal case, but does not include the reason given by the Kayenta District Court. The four specific reasons are, if the court has reason to believe, 1) that the defendant is dangerous to public safety, 2) that the defendant will commit a serious crime, 3) that the defendant will seek to intimidate any witness, and 4) that the defendant will otherwise unlawfully interfere with the administration of justice. NRCP 15(d). The rule also includes a fifth catch-all category, “for any other reason allowed by law.” Id. Further, the rule i xplicitly requires a court to state the reasons for the continued detention. Id.
The Court holds that the District Court’s order to continue Seaton’s detention because incest is a serious charge is a violation of Seaton’s right to due process and that mere seriousness of the alleged offense does not, by itself, justify continued detention. The seriousness of the charged offense is not one of the four specific reasons that justify continued detention, and, the Court concludes, is not a “reason allowed by law.”[2] The reference to a “serious” crime in Rule 15(d) refers to future actions of the defendant, and does not mean the seriousness of the alleged crime for which he or she currently is being detained. The purpose of the rule is to prevent the defendant from causing harm to the general public or a specific witness or from disrupting the judicial process by interfering with the prosecution of his or her case. The mere fact that the Navajo Nation charges the defendant with a single serious offense, in and of itself, does not establish whether the defendant poses a danger to the public or to the justice system.[3] To hold a defendant merely because the complaint alleges a serious offense improperly treats the defendant as guilty before the trial, by assuming the allegations are true and essentially punishing him or her before the Nation has established beyond a reasonable doubt that the offense occurred. This clearly violated Seaton’s right to due process.
Further, even if the District Court thought that Seaton was a danger, it failed to notify Seaton of that belief by stating its reasons in the temporary: commitment orders. Based on the language of the temporary commitment orders, Seaton would have little idea why he continued to be detained, other than one reference to the seriousness of the alleged offense, which, as discussed above, is.an improper reason. *742 The District Court failed to comply with Rule 15(d) by not providing reasons for Seaton’s detention, and therefore did not provide Seaton notice and an opportunity to contest those reasons.[4] The court thereby again violated Seaton’s right to due process, as Seaton had no notice and opportunity to respond to the Nation’s or the Court’s reasons for continued detention. See In re Certified Questions II, 6 Nav. R. 105, 118-10 (Nav.Sup.Ct.1989) (Navajo due process requires notice and opportunity to be heard before tribunal).
IV
Even if the lack of written reasons for the continued detention was not enough to justify releasing Seaton, he alleged in his petition that the District Court violated his right to a speedy trial, by, among other reasons, granting seven continuances between his arrest on August 19, 2005 and his filing of the habeas corpus petition on February 3, 2006.
Under the Navajo Bill of Rights criminal defendants have a right to a speedy trial. 1 N.N.C. § 6 (2005). In determining whether the right to a speedy trial has been violated, the Court applies four factors: 1) the length of the delay, 2) the reason for the delay, 3) the defendant’s assertion of the right, and 4) the prejudice to the defendant caused by the delay. Navajo Nation v. McDonald, 6 Nav. R. 1, 11 (Nav.Sup.Ct.1992); Navajo Nation v. Bedonie, 2 Nav. R. 131, 139 (Nav.Ct.App. 1979). The Court interprets these factors in light of Diné bi beenahaz’áanii. Navajo Nation v. Badonie, 6 Am. Tribal Law 725, 727, 2006 WL 6168955, at *2 (Nav.Sup.Ct.2006). They are related factors and the Court must consider them together with the relative circumstances, “engaging in a difficult and sensitive balancing process.” Id, Further, “the right of a speedy trial is necessarily relative,” as “it is consistent with delays and depends upon circumstances and secures rights to a defendant, but does not preclude the rights of public justice.” Id. at 727, 2006 WL 6168955, at *2.
Under the four factors, the Court holds that the District Court violated Sea-ton’s right to a speedy trial. Under the first factor, as of the hearing on Seaton’s petition before this Court, Seaton had been in detention for approximately 172 days without a trial. Under the third factor, Seaton himself, with no assistance from his attorney, filed a writ of habeas corpus with this Court, claiming a violation of his speedy trial right. Under the fourth factor, Seaton experienced significant prejudice, as the District Court’s orders of temporary commitment coupled with the seven continuances meant that he remained in jail with no resolution of his case for nearly six months. The remaining issue is the second factor, the reason for the delay,
Based on the orders of continuance in the record, there were several different reasons for the delay. The first two continuances were at the request of Seaton’s attorney and the prosecutor to allow them *743 to prepare their cases. By themselves, those continuances are not problematic. However, the next continuance, from November 9, 2005 to November 23, 2005, occurred because the Department of Corrections failed to transport Seaton from the McKinley County jail to the hearing. The next continuance, from November 23, 2005 to December 19, 2005, occurred so that the GAL could inform the court of the alleged victim’s position on the motion to transfer the case to peacemaking. The next continuance, from December 19, 2005 to January 11, 2006, occurred because Sea-ton’s attorney had knee surgery and was unavailable. Seaton’s attorney did not file a motion seeking a continuance, but sent a memorandum to the District Court indicating he would be absent from work. The prosecutor then moved for a continuance, indicating to the court that a hearing would be useless without Seaton’s attorney. The next continuance, from January 11, 2006 to January 26, 2006, was at the request of the GAL, who indicated she had another hearing scheduled, but that she could appear telephonically. The District Court decided to continue the hearing. Finally, the last continuance, from January 26, 2006 to February 6, 2006, occurred because the GAL asked for more time to respond to (a deferred prosecution agreement proposed by the Navajo Nation and Seaton’s attorney.
The multiple continuances after November 9, 2005 are not justifiable, and therefore the Court gives little weight to the reasons Seaton’s case was delayed. Seaton’s nonappearance at the November 9, 2005 hearing was caused by lack of communication by the Department of Corrections. As to the delay of the November 23, 2005 hearing, the court could have ordered the GAL to submit a report long before the month it gave her. The delay of nearly a month due to his attorney’s surgery, during which Seaton remained in jail until his attorney recovered, could have been avoided if some effort was made to not violate Seaton’s rights. The District Court could have requested that the Navajo Nation Public Defender’s Office supply a different attorney, or set up a telephonic hearing with counsel at his home, or appoint a new attorney to assist Seaton. Again, the delay due to the GAL’s other hearing on January 11, 2006 could have been avoided by setting up a telephonic healing. Finally, the District Court could have denied the requested continuance by the GAL to respond to the proposed de.ferred prosecution agreement. A defendant’s right to a speedy trial cannot be compromised for the convenience of others. Both the court and counsel have an obligation to protect the rights guaranteed by the Navajo Bill of Rights.
Additionally, regardless of whether or not the District Court could have avoided these delays, the continuance to allow the GAL to file pleadings was improper. While the Navajo Nation Code anticipates the appointment of a GAL in Children’s Code cases, see 9 N.N.C. §§ 1107(D), (F) (for child), 1303(D) (for incompetent parent) (2005), nothing explicitly authorizes a district court to appoint a GAL for an alleged victim in a criminal cáse. Even assuming such appointment is within the authority of the court, a victim is not a party and a GAL does not act as an attorney, and therefore the GAL was not authorized to file motions and responses in opposition to the parties’ motions. First, though a victim may attend a criminal proceeding, and a court may hear his or her views on plea bargains and sentences, a victim is not a party to the proceeding. See 4.1, Navajo Courts’ Uniform Sentencing Policy, Rule 1.4(a) (stating that a victim has a right to “participate” in criminal proceedings), Rule 4.1 *744 (stating that court should require prosecutor, probation and parole officer to “interview” the victim to obtain his or her views on “plea bargains, proposed sentences, and the extent of the victim’s damages”). Only the Navajo Nation and the defendant are actual parties. See generally Navajo Rules of Criminal Procedure (discussing criminal proceedings involving a prosecutor and defendant). More importantly, a GAL does not act as an attorney, but is appointed by the court to advise it on the views of a minor or other individual incapable of expressing their wishes. See In re Custody of T.M., 3 Am. Tribal Law 485, 489, 2001 WL 36173239, at *4 (Nav.Sup.Ct. 2001) (“We want a guardian who will do a thorough review of the case, including witness interviews and a complete examination of all documentation on the child, and then give an independent, accurate and reliable report to the court as a commentator, but not an advocate.”); see also Navajo Children’s Code Rules of Procedure, Rules 2(h) (“The guardian ad litem is not the legal counsel.”), 5(a) (a GAL “speak[s] on behalf of the child ... [but] shall not be the legal counsel for the child.”). Indeed, a GAL does not even need to be an attorney, and a court cannot appoint an attorney to act as GAL except on a specific finding that “a legally trained guardian ad litem is required.” Rule V, Navajo Pro Bono Rules; see also Navajo Children’s Code Rules of Procedure 5(b). Consistent with this, a GAL does not file pleadings advocating for a particular position, but files a neutral report to the court on his or her observations. See T.M., at 489, 2001 WL 36173239, at *4.[5] Therefore, the grant of a continuance to allow the GAL to participate essentially as an attorney for a party was inappropriate, and cannot justify the delay in resolving Seaton’s case.
Based on these factors, Seaton’s speedy trial rights were violated. Seaton’s continued detention was therefore illegal.
Y
Based on the above, the Court released Seaton. His release does not affect the underlying charge, as this Court may not vacate charges or convictions in a habeas corpus case. See In re H.M., at 456, 2004 WL 5658523, at 3.

. Though habeas proceeding are civil, and therefore covered under Rule 26 of the Navajo Rules of Civil Appellate Procedure, the procedures set out in Rule 14 of the Rules of Appellate Procedure are incorporated into Rule 26. See Thompson, at 401, 2004 WL. 5658108 at *1.

. The Court is not aware of any statute mandating detention of persons charged with a «certain crime.

. A record of prior violent behavior or multiple convictions for violent crimes might justify continued detention under these criteria. However, there is no indication that Seaton has such a record.

. It may be that the District Court discussed Seaton's continued detention at one or more of the several hearings in this case. The record submitted to this Court is silent on that point. Regardless, several of the commitment orders were done without hearings, based on various requests for continuances, and therefore the court could not have told Seaton why he continued: to be detained. Further, the Court reads the part of Rule 15(d) that requires a district court to "state the reasons [for the continued detention] on the record,” to require written reasons in the temporary commitment order. A written requirement guarantees that there is no confusion on the defendant’s part concerning the court's reasons for continuing the detention, and therefore that a defendant has notice of those reasons and an opportunity to challenge them,

. Curiously, on February 1, 2006 the District Court ordered the GAL to submit a minute entry order within ten days. The order indicated that failure to submit the minute entry order would result in an order to show cause against the GAL. This also was improper, as, consistent with the above discussion, a GAL’s role is not to draft orders on behalf of courts.