OPINION

This case concerns the detention of a juvenile for the violation of a child in need of supervision order issued by the Tuba City Family Court. The Court previously released the child from detention, and issue this opinion to give its reasons.
I
Petitioner M.G. filed a petition for a writ of habeas corpus, seeking her immediate *515 release from her detention in the Western Navajo Juvenile Services Center in Tuba City. The Tuba City Family Court (Family Court) previously adjudicated her a child in need of supervision (CHINS) for truancy, and had issued an order requiring her and her mother to attend school and comply with certain other conditions. The Family Court issued its written order on October 31, 2006. The next day, the dean of Tuba City High School sent a letter directly to the Family Court alleging M.G. had violated the order by being late to school for two days and that her mother violated the order by not attending class with M.G. The day after that, November 2, 2006, the Family Court issued an order to show cause, requiring M.G. to return to the court and justify why she should not be held in contempt for violating the CHINS order. After the Family Court granted several continuances to the juvenile presenting officer, the court held a “sentencing hearing” on January 30, 2007. Based on the evidence at the hearing, including allegations of other violations not set out in the order to show cause, the Family Court found M.G. in contempt, and ordered her to serve a term of one hundred and eighty days in the Western Navajo Juvenile Services Center.
The Chief Justice issued a writ of habe-as corpus and the Court held a hearing on March 8, 2007. Neither Respondent Grey-eyes nor her legal counsel attended the hearing, but a corrections officer appeared on behalf of the Department of Corrections. At the hearing, M.G. alleged, and the corrections officer did not deny, that she was on lockdown in the maximum security section of the Services Center due to altercations with other children. Based on the presentations of the parties, the Court immediately released MG li om her detention.
II
The issue in this case is whether a family court may incarcerate a juvenile adjudicated a child in need of supervision under its contempt powers for violation of a child in need of supervision-order.
III
This case is simple. The Navajo Nation Children’s Code prohibits a family court from placing a child in need of supervision “in a jail or other facility intended or used for ... the detention of children alleged to be delinquent.” 9 N.N.C. § 1111(B)(2005). The Code limits the disposition of a child in need of supervision to, among other things, the transfer of legal custody “to an agency responsible for the care of children in need of supeivision, but not to one which is designed for custody of delinquent children.” 9 N.N.C. § 1152 (2005) (emphasis added). There is no dispute in the record that the Family Court intended to jail Petitioner, and that Petitioner was, at the time of her Petition, in a juvenile facility intended for the custody of delinquent children. See Order to Show Cause and Notice of Hearing, November 2, 2006, Petitioner’s Exhibit 6 (stating that a finding of intentional violation of the CHINS order might result in being “jailed”); Minute Entry & Order, February 12, 2007, Petitioner’s Exhibit 7 (stating that M.G. was in contempt of court and that she would “serve One Hundred and Eighty (180) days at the Western Navajo Juvenile Center”). Indeed, M.G. alleged, and the corrections officer did not deny, that immediately prior to the habeas corpus hearing, she was on lockdown in the maximum security section of the Services Center. The Family Court apparently believed it was not prohibited from incarcerating her when it found her in contempt of court for allegedly violating the terms of the CHINS order. The question is wheth *516 er the Family Court can use contempt powers to enforce a CHINS order through incarceration, when it lacked that power in the original CHINS order.
The Court holds a family court cannot use contempt to accomplish the incarceration of a CHINS child when it could not have incarcerated that child in the original CHINS order. The Children’s Code reflects the clear intent of the Navajo Nation Council that CHINS children are a distinct group from juvenile delinquents and require a different type of treatment. As defined by the Children’s Code, children in need of supervision have not committed a criminal offense, but are in need or care or rehabilitation. 9 N.N.C. § 1002(G). On the other hand, delinquent children have committed an offense that would be criminal if committed by an adult under the Criminal Code or the Motor Vehicle Code. 9 N.N.C. § 1002(M). The use of contempt to incarcerate a CHINS child improperly treats that child as delinquent, violates the Council’s clear prohibition on incarceration of such children, and amounts to cruel and unusual punishment under the Navajo Bill of Rights.[1] See 1 N.N.C. § 9 (2005); Thompson v. Greyeyes, No. SC-CV-29-04, 5 Am. Tribal Law 400, 402-03, 2004 WL 5658108 at *2-3 (Nav.Sup.Ct.2004) (jail sentence outside authority of trial court is cruel and unusual punishment); Martin v. Antone, No. SC-CV-48-02, 4 Am. Tribal Law 666, 667, 2003 WL 25794139 at *1 (Nav.Sup.Ct.2003) (same). The power of contempt gives no additional authority to a trial court to imprison those the Council exempts from imprisonment. This principle is especially important in the case of juveniles, as the strict restrictions in the Children’s Code reflect that children are not fully emotionally mature and that children experience a “gamut of emotions” while in custody that can lead to violent acts on themselves or others. In re H.M., No. SC-CV-63-04, 5 Am. Tribal Law 454, 457-58, 2004 WL 5658523 at *2-3 (Nav.Sup.Ct.2004).[2]
Ill
For the above reasons, the Court released the child. As indicated in this Court’s release order, the underlying CHINS order remains in effect. See In re H.M., No. SC-CV-63-04, 5 Am. Tribal Law at 458, 2004 WL 5658523 at *3 (Court only has authority to release detained persons under writs of habeas corpus, and will not vacate convictions or other merits orders).

. Incarceration also undermines the apparent purpose of the original CHINS order, which was to require M.G. to attend school, which, by definition, she could not do if incarcerated.

. This case demonstrates the problems that can develop when children are incarcerated. As discussed above, M.G. alleged at the hearing, and the corrections officer present did not deny, that she was placed on lockdown in the maximum security section of the detention facility due to altercations with other incarcerated children.