*Corrina DAVIS*
Petitioner
*vs.*
CROWNPOINT FAMILY COURT, *Navajo Nation*
Respondent
*and concerning*
*Hyrum Halloway*
Real Party in Interest

In the Supreme Court of the Navajo Nation

No. SC-CV-46-01

March 11, 2003

Casey Watchman, Esq., Crownpoint, Navajo Nation (New Mexico), for Petitioner.

Mary Dickman, Esq., Crownpoint Family Court, Navajo Nation, for Respondent.

Before YAZZIE, Chief Justice, and KING-BEN and FERGUSON, Associate Justices.

Opinion delivered by FERGUSON, Associate Justice.

The issue of whether a Family Court may grant an alleged father custody of children in a Domestic Violence proceeding was raised in a *habeas corpus* proceeding. We hold that a putative father has no standing to request custody of a child and that a family court has no jurisdiction to grant custody of a child without a legal determination of paternity.

On October 18, 2001, Hyrum Halloway, putative father, filed a Petition for a Temporary Protection Order alleging that Corrina Davis, mother, committed acts of domestic violence against him. The Putative father requested that he be granted custody of two minor children, ages 5 and 7. The Crownpoint Family

Court reviewed the petition and issued an *ex parte* temporary protection order granting custody of the minors to the putative father while mother was detained at the Crownpoint Public Safety facility. The putative father subsequently removed the minors from the home they shared with their mother, which she described as "the only home they have known". The minors and their belongings were also removed from their school in Mariano Lake, New Mexico. The putative father removed the minors to Arizona and enrolled them in a school there. When Davis, the mother filed her petition on October 30, 2001, she informed this court that prior to their removal, the minors were well adjusted and thriving in school at Mariano Lake.

We previously reviewed the petition and summarily granted a writ of *habeas corpus*. The writ of *habeas corpus* was grounded upon the best interests and welfare of the minors and due process considerations. We questioned whether there was a legal determination made to establish paternity so as to grant to a putative father child custody. In our *habeas corpus* writ, we directed the family court to decide whether it had jurisdiction to grant child custody in this matter. Respondent Honorable Irene Toledo, in SC-CV-46-01, filed with this Court her *Motion to Vacate the Writ of Habeas Corpus* on November 6, 2001 raising the following four (4) issues, which give us further opportunity to clarify the reasons for issuing the writ of *habeas corpus*: (1) whether the Crownpoint Family Court has jurisdiction to award temporary custody of the minors to the putative father; (2) whether the putative father has standing to request custody of the minors; (3) whether the mother was afforded due process by the Crownpoint Family Court when it granted custody to the putative father; and, finally (4) whether it is appropriate for this Court to substitute its own findings of fact with those of the Family Court. We will discuss the issues as they were presented.

I

We combine the first two issues for discussion: whether the Crownpoint Family Court has jurisdiction to award temporary custody of the minors to the putative father; and, whether the putative father has standing to request custody of the minor children. We have previously dealt with these matters in other cases by summary orders. *See Wood v. Morris*, No. SC-CV-13-2000 (decided February 25, 2000) and *Todicheeinie v. Edsitty*, No. SC-CV -56-98 (decided May 16th, 2000). Summary orders have no precedential value. Rule 22(c) of the Navajo Rules of Civil Appellate Procedure requires that, "Memoranda decisions and orders shall not be used as precedent nor cited in any court except for the purpose of establishing the defense of *res judicata*, collateral estoppel, or the law of the case. Only opinions shall be used as precedent." We, therefore, take it upon ourselves today to create an opinion that is not inconsistent with our views issued previously as orders to be used as precedent in paternity issues in Domestic Violence Protection Orders.

We do not have the benefit of a Navajo paternity statute to resolve issues

of jurisdiction and proper procedures in paternity cases. In the absence of legislative action, we are forced to lay down rules to ensure fairness. A married man is presumed to be the father of his wife's children born during the marriage and is held responsible for the rights and obligations of parenthood from the time of the birth of a child. *See Davis v. Davis*, 5 Nav. R. 169 (Nav. Sup. Ct. 1987). Children born out of wedlock do not have the benefit of such presumption. Until paternity is determined, putative parents are "legal strangers" to the children and cannot be granted parental rights nor made to fulfill parental obligations by a court. Mere claim of biological parenthood is not enough to entitle a parent to child custody. The best interests of a child are paramount in custody decisions and a determination of paternity. We decide today that a Navajo court lacks jurisdiction to grant a putative father custody of minors in a temporary protection order without a legal determination establishing paternity and a parent-child relationship. In this regard, not even a putative father has standing to request custody. A paternity determination is a legal precondition in granting custody to a putative parent.

An alleged father named in a birth certificate does not release a Navajo Family Court from making a legal determination of paternity. While the court may apply presumption of paternity, the court should weigh all the evidence presented, including rebuttals to the presumption.[1] Such factor was not considered by the court in this case. If Mr. Halloway was named in the minors' birth certificates, he did not bother to furnish that information before the family court granted custody to him.

## II

We further conclude that due process was not afforded to the mother when the Crownpoint Family Court granted the putative father child custody based upon the Domestic Abuse Protection Act, (DAPA), 9 N.N.C. § 1660 (A) (7) (b). When a petition is filed for a protection order pursuant to DAPA, a temporary protection order is issued *ex parte* without notice to the Respondent or without a hearing.

Due process requires that when a temporary protection order is issued, a hearing is required within 15 days from date of issuance. The primary purpose of

---

[1] New Mexico has a presumption statute in Section 4-11-15 which creates a presumption where the natural father of a child acknowledges his paternity of the child pursuant to Section 24-14-13 NMSA 1978. A signed voluntary acknowledgment of paternity is considered a legal finding of paternity. Section 24-14-13 addresses birth registration. According to E of this section, if the mother is not married when the father signs an acknowledgment of paternity, the father's name, date of birth and social security number shall be entered on the acknowledgment of paternity. However, the name of the father shall not be entered on the certificate of birth without the written consent of the mother and the person to be named as the father, unless a determination of paternity has been made by a court, in which case, the name of the father as determined by the court shall be entered. NMSA 1978, 2000 Replacement Pamphlet.

an *ex parte* temporary order is to maintain status quo until a hearing can be held. In this instant the *ex parte* order granting the putative father custody resulted in the removal of children from their mother to another state, to another school away from the community in which they were raised. One can hardly say that the status quo was maintained. The *Domestic Abuse Protection Act*, 9 N.N.C §1660 addresses available relief. This section is divided into two.

The first part, 9 N.N.C. 1660 (A), list remedies available only upon a hearing. The Second part, 9 N.N.C. § 1660 (B) also list available *ex parte* remedies which are temporary and require a hearing before they are made permanent.

Respondent argues that in determining custody, the court shall presume that an abusive parent is unfit to have custody of the minor children. Section 1660 (A) (7)(b) of Title 9 is a two-step process. First, for this section to operate, the mother must be found abusive in a hearing and the father has the burden to prove his case. Secondly, once found abusive, the inference that the mother is unfit can be rebutted by the mother to show that she is not abusive of the children and that her abuse of others does not adversely affect them.

Davis, the mother, must be given the opportunity to defend herself against the allegations of violent acts, which presumably placed her children in danger. Should Halloway, the putative father, satisfy his burden of proof that the mother did indeed commit acts of violence, 9 NNC §1660 (A) of the DAPA authorizes the granting of child custody once the mother fails to rebut the presumption.[2]

The finding by the court that Davis, the mother, is unfit without a hearing or without proof to the satisfaction of the court by the putative father that she committed acts of abuse, violates her due process rights.[3] For these reasons, we conclude that the Crownpoint Family Court violated the mother's due process rights by misapplying section 1660 (A) (7) (b) of the Domestic Abuse Protection Act.

## III

Respondent asks whether it was inappropriate for this Court to substitute its own findings of fact with those of the family court. When this case came before this Court initially, there were no findings of fact for this Court to consider or "replace". Our findings were based on the temporary protection order issued by the Crownpoint Family Court along with the information provided by the mother when she filed her *Petition for a Writ of Habeas Corpus*. If indeed, the Crownpoint Family Court did make findings prior to the granting of custody

2 The domestic abuse law states that the family court may award either party immediate temporary custody of any minor until further ordered by the court or the court may enter a permanent custody order. 9 NNC §1660 (A)(7)(a).

3 "'In determining custody, the court shall presume that an abusive parent is unfit to have custody of the minor children.' 9 N.N.C. §1660 (B) (referring to 9 N.N.C. §1660 (A)(7)(b)) The Family Court deemed that Ms. Davis was an abusive parent and therefore presumed her to be unfit to have custody of the children." Respondent's Motion to Vacate Order, page 4, paragraph 3.

to the putative father, Respondent did not provide those findings to this Court in her *Motion to Dismiss the Writ of Habeas Corpus* or when she asserted the inappropriateness of this Court to substitute its own findings with those of the family court. The writ of *habeas corpus* was in part based on the lack of findings by the family court.

IV

Where child custody issues are involved, the best interest and welfare of the children are important considerations. It is proper to use *habeas corpus* writs to address custody of children. When considering custodial rights of children in a writ of *habeas corpus* proceedings, the inquiry is broader than that normally involved in other *habeas corpus* proceedings.

The child's best interests and welfare become prime considerations even if the natural right of parents are entitled to due considerations. *Roberts v. Staples*, 79 N.M. 298, 442 P.2d 788 (1968). Thus even if paternity is found, in the best interest and welfare of children, a father might not be granted custody where he had not established a parent-child relationship with the children. *Barber v. Barber*, 5 Nav. R. 9 (Nav. Ct. App. 1984).

Accordingly, we give primary considerations to the best interests and welfare of the minors in this matter. Halloway, the putative father, once given what we assume to be temporary custody of the two minors, removed them to Arizona and enrolled them in a school away from their home, community, and maternal relatives. The minors' adjustment to home, school and community are important factors we took into consideration. Certainly, the putative father's actions and conduct in this regard prompt suspicion and alertness to the pernicious impact upon the children. Such conduct impinges on any child-parent relationship he may have and the best interests and welfare considerations important to this Court. We conclude that his actions demonstrate possibility of his intent to hold the minors permanently which becomes a jurisdictional concern, especially where children are removed from the state in which they reside.

Finally, Respondent is reminded that this Court discourages use of language which is insulting and accusatory. This Court has stated before that this is no place for charged language. *Wilson v. Wilson*, 3 Nav. R. 63, 65 (Nav. Ct. App. 1982). Such conduct reflects poorly on our system and poorly on practitioners who engage in such conduct. Based upon the above, we granted the *Writ of Habeas Corpus* and denied Respondent's motion to vacate the writ on November 8, 2001.

KING-BEN, Associate Justice, Dissenting Opinion

In response to our November 8, 2001 order denying the Crownpoint Family Court's *Motion to Vacate*, four issues were raised. They are: 1) whether the Crownpoint Family Court has jurisdiction to award temporary custody of the minors to the Petitioner, the natural father; 2) whether the natural father has standing to request custody of the minors; 3) whether the mother was afforded due process by the Crownpoint Family Court when it granted custody

to the natural father; and 4) whether it is appropriate for the Supreme Court to substitute its own findings of fact with those of the Family Court.

**Does the Crownpoint Family Court have jurisdiction to award temporary custody of the parties' minor children to the Petitioner who is also the natural father.**

The paramount issue is whether the Crownpoint Family Court had jurisdiction to award temporary custody of two minor children to the Petitioner, Hyrum Holloway ("Halloway') in a *Temporary Protection Order* (TPO) arising out of a Domestic Abuse Protection Act (DAPA), 9 N.N.C. §1601 et. seq., proceeding where the court determines an emergency exists and without first holding a hearing as required by §1655A (2)( a).

On October 18, 2001, Halloway filed a *Verified Petition for Domestic Abuse and Motion for Protection Order.*[1] On the same day, upon hearing the petitioner and considering the petition, the court entered its TPO. The order was issued without notice to the Respondent Corrina Davis ("Davis") on the grounds that if notice is provided, Davis would "more than likely retaliate and inflict injury before the Order were to become effective." Pursuant to §1655 of DAPA, the court can immediately grant or deny the motion for a TPO without a hearing or notice to the respondent if the court determines that an emergency exists. In this case, although Petitioner Davis did not file an official record or transcript with this Court,[2] the record we do have shows allegations of domestic violence in both Halloway's petition for a TPO and in Davis' pleadings and attachments.

Attached to Davis' *Petition for Writ of Mandamus, Writ of Habeas Corpus, or Other Appropriate Writ* along with other exhibits, are copies of two criminal complaints filed against her. The first complaint dated October 14, 2001 is for aggravated battery, an incident involving an assault with a knife; and the second complaint dated October 15, 2001 is for aggravated assault. According to the petition for the TPO, Davis is violent and committed acts of domestic violence. The alleged acts of domestic abuse are referenced in paragraph 2(a) of the *Petition for Domestic Abuse Protection Order and Motion for Protection*. Based on this information, there was an emergency and the Court had jurisdiction to issue a TPO and award temporary custody to Halloway. The Family Court should retain jurisdiction until it issues a final decision on the merits.

**Whether Davis was afforded due process by the Crownpoint Family Court when it granted custody to Petitioner Halloway.**

The court may issue a temporary *ex parte* order in emergency situations but is required to hold a hearing within 15 days after it issues a TPO to provide the

[1] In his Petition for Domestic Abuse Protection Order and Motion for Temporary Protection Order filed on October 18, 2001, Hyrum Halloway refers to the respondent as his common-law spouse. *See* page one of the petition.

[2] As Petitioner Davis did not file the official record and transcript of the Family Court proceedings, if any, along with her petition, we do not have any information as to what testimony or evidence was provided at the TPO hearing.

respondent an opportunity to appear at a hearing to show cause why the court should not issue a Domestic Abuse Protection Order. *See* §§1665A(1)(d) and 1655 A(2)(a) of DAPA.

On October 18, 2001, the Court ordered Davis to appear before the Court on October 26, 2001, to answer the petition and at which time the court would determine if the final judgment for Permanent Protection Order is necessary. However, the hearing on the merits scheduled for October 26, 2001 was continued due to events beyond the Court's control.[3] On October 30, 2001, Davis filed a *Motion for Immediate Restoration of Custody* with the Family Court. Then on November 1, 2001, Petitioner Davis filed her *Petition for Writ of Mandamus, Writ of Habeas Corpus, or Other Appropriate Writ*. In this petition, Davis informed this Court that on October 30, 2001, she was informed that the motion for immediate restoration of her children was scheduled to be heard on November 9, 2001 along with the domestic violence allegations.

The Family Court had also informed us in their *Motion to Vacate Order* filed on November 6, 2001, that the hearing was continued to November 9, 2001, at which time the court would address the merits of the allegations of both parties. This Court has held that it will not intervene in procedural matters prior to trial unless the petitioner can show that fundamental rights are being denied. *See Pino v. Bedonie*, 7 Nav. R. 15, 16 (Nav. Sup. Ct. 1992). Although the hearing was scheduled three days beyond the 15 days as required by DAPA, it was not egregious as to violate Davis' due process rights. Essentially, here Davis filed a petition for a writ prior to entry of a final order thereby using the proceeding as a substitute for appeal. We prefer to let the Family Court address errors before intervening as a matter of deference and efficiency. In this case we did not allow the Family Court to address the petitioner's concerns although it was scheduled to do so.

Questions may arise as to why this Court granted the writ in the first place. Decisions considering requests for writs of mandamus and prohibition must be decided immediately as we did in this case. *See* Rule 26(a) of the Navajo Rules of Civil Appellate Procedure (NRCAP). Not only was this case filed as a *Petition for Writ of Mandamus, Writ of Habeas Corpus, or Other Appropriate Writ*, but child custody is in issue as well and cases dealing with child custody are given priority. *See* Rule 27 of the NRCAP.

When Davis filed her petition, she portrayed the matter as an emergency. She informed us that her children were removed from the only home they know and taken to another state. Davis did not inform us that the October 26, 2001 hearing had been continued to November 9, 2001 although she was apparently informed prior to her filing the *Petition for Writ of Mandamus, Writ of Habeas Corpus, or Other*

---

3 On October2 5, 2001, Chief Justice Yazzie issued a memorandum informing the courts that staff are granted administrative leave on October 26, 2001 in recognition of "Spirit of the Navajo Nation: United We Stand Tribute." The Courts and all the Navajo Nation offices were closed this day.

*Appropriate Writ.*[4]

In retrospect, it may have been more reasonable to have denied the petition for a writ and ordered the court to hold a hearing immediately so as not to deny the Respondent's due process rights. It would have been more appropriate for Davis to request the Court to reschedule the motion for Temporary Protection Order (TPO) immediately rather than filing a "Petition for Writ of Mandamus, Writ of *Habeas corpus*, or Other Appropriate Writ" with this Court. At any rate, this Court acted hastily in granting the request for a writ.

When a petition for an extraordinary writ is filed, the applicant is required to file copies of any order, opinion, or parts of the record which are necessary for an understanding of the matters set forth in the petition. In this case, the petitioner failed to file copies of the Answers she filed with the Family Court[5] or information as to the procedural posture of the case. The trial court record would have given this court a better understanding of the nature of the dispute. It must be emphasized that from here on, Petitioners file with their Petition for a writ, copies of the official trial court record so this court can dispense of the case fairly, justly and without delay.

> **Whether it is appropriate for the Supreme Court to substitute its own findings of fact with those of the Family Court.**

Finally, I agree with the Respondent Family Court that the Supreme Court is not in a position to substitute its own findings of fact for those of the Family Court. The record is sparse in this case and it was incumbent upon Davis to file the record. The majority has labeled the natural father, "putative father" so as to justify that he did not have standing to be awarded temporary custody of the minor children. Halloway is listed as the natural father on birth certificates registered with the State of New Mexico in May 1994 and 1996. The birth certificates were attached as Exhibits "A" and "D" to Davis' petition for a writ.

The official court record and the transcript were not made available to us and we cannot assume that a legal determination was not made as to Halloway's standing or as to his relationship to the minor children. Davis provided documents that are one sided and inflammatory, and this court reacted to her documents rather than remanding the case to the Family Court for a hearing on the merits. Because we are dealing with children's rights and the trial judge is in a position to have a clearer grasp of the situation, this Court should defer to the trial court until the picture is clarified. See *Benally v. Toledo*, 3 N.L.R. 86, 86 (Nav. Ct. App. 1982).

4 According to the Crownpoint Family Court, Corrina Davis had been provided notice that the October 26, 2001 hearing had been continued and rescheduled for November 9, 2001. *See* page 10 of the Motion to Vacate filed on November 6, 2001. Davis also admits in her petition that the hearing had been continued to November 9, 2001.

5 On page two of the Motion to Vacate the Family Court informs us that "On October 22, 2002, Ms. Davis, *pro se*, filed an Answer to the Petition for Domestic Abuse protection Order.

## CONCLUSION

This court was not provided a complete record of the trial court proceedings and we should not assume that there was no legal determination of paternity. There is evidence in the record that Halloway is the natural father, and that he has lived with Davis and the children. In this instance, requiring the Family Court to determine legal findings of paternity in an *ex parte* TPO proceeding when paternity was never challenged and when the matter is set for a hearing works to the detriment of the children and natural father. Upon a thorough review of the documents filed with this Court, I agree with the Crownpoint Family Court that the Supreme Court order dated November 2, 2001 should be vacated.

