*In the Matter of*
*Lorraine SHEPPARD*
Petitioner-Appellee
*vs.*
*Tony DAYZIE*
Respondent-Appellant

In the Supreme Court of the Navajo Nation

No. SC-CV-66-00

January 7, 2004

Robert Curley, Esq., Tuba City, Navajo Nation (Arizona), for Appellant.

Casey Watchman, Esq., Crownpoint, Navajo Nation (New Mexico), for Appellee.

Before BATES ARTHUR, Chief Justice, and FERGUSON, Associate Justice.

Opinion delivered by FERGUSON, Chief Justice.

This case is before this Court on an appeal from a decision of the Kayenta Family Court that denied Dayzie's motion to dismiss an order to show cause and to vacate orders entered assigning a homesite lease and transferring the ownership of a house to Sheppard. We vacate the family court orders reassigning the homesite lease and transferring ownership of a house in a Domestic Abuse Protection Act (DAPA) proceeding.

I

The Kayenta Family Court entered a divorce decree between the parties on February 2, 1995. The court decree incorporated the parties' stipulation to, among other things, the award of a four bedroom framed house located 14 miles west of Kayenta to Dayzie. The decree made no mention of a homesite lease. Three years after the divorce on July 27, 1998 Sheppard requested and received a domestic abuse protection order from the family court. The order incorporated recommendations of a Commissioner authorized to conduct DAPA hearings and to make findings and recommendations to the family court. In the DAPA order the family court ordered Dayzie to stay away from the house granted to him in the divorce decree and granted *possession* of the house to Sheppard and the children.[1] The order was effective for five years.

On August 25, 1998, on motion by Dayzie for reconsideration, which was denied, the family court "reassigned" to Sheppard the homesite lease upon which the house previously awarded to Dayzie is located. This is the first time the subject of the homesite lease was brought up. Nothing in the record shows to whom the homesite lease is assigned. On September 27, 1998, Dayzie moved for reconsideration of the August 25, 1998 protection order in which the homesite lease was reassigned. His motion was denied. However, the family court went beyond the reconsideration motion and determined that the frame house was the separate property of Sheppard based upon a finding by the court that Sheppard was the recipient of a "joint use area home."[2] The finding was contrary to the divorce decree in which the house was awarded to Dayzie. The status of the house as a "joint use area home" was brought up for the first time at this hearing.

A year later, on August 24, 1999, another DAPA order was issued amending the previous order, ordering Dayzie to remove all personal belongings and to refer the court order reassigning the homesite lease to the grazing officials or to voluntarily relinquish the lease to Sheppard "so she can sell her Joint Use Area (JUA) house." Dayzie was also ordered not to interfere with renters and with the process of selling the house.

On March 6, 2000, the court entered another order basically reciting the August 24, 1999 order. On May 30, 2000, Dayzie was summoned to court on an order to show cause. Dayzie moved the court to dismiss the motion and to vacate all orders concerning the home and homesite lease. On November 2, 2000, Dayzie's request to dismiss the motion and to vacate the DAPA orders was denied and the court entered another order again reassigning the homesite lease to Sheppard. Dayzie appealed the November 2, 2000 order this Court.

[1] Granting possession of the house was for a specified time which has since expired.

[2] *See Yazzie v. Yazzie*, 8 Nav. R. 41 (Nav. Sup. Ct. 2000) (relocation housing benefits specifically intended to support the families and individuals being relocated pursuant to the Navajo-Hopi Settlement Act, 25 U.S.C. § 640d).

## II

The issues presented are: (1) whether by ordering the transfer of property from one party to another in a DAPA action, the court abused its discretion; and (2) whether by modifying, amending or vacating a court order previously entered in disregard of Rules 59 or 60 under the Navajo Rules of Civil Procedure (Nav. R. Civ. P.), the court abused its discretion.

## III

We review these issues for abuse of discretion by the court. We recently defined *discretion* in *PacifiCorp v. Mobil Oil Corp.*, 8 Nav. R. 378, 386 (Nav. Sup. Ct. 2003) as the discretion to act within certain boundaries of rules, principles and customs applied to the facts of the case. While the judges have discretion, there are limits to that discretion. Discretion is limited by legal principles and must be exercised in conformity with the spirit of the law and adopted rules, to serve the ends of justice. We begin our review by looking at DAPA and the relevant rules, the Nav. R. Civ. P. and the Navajo Rules for Domestic Violence Proceedings (NRDVP).

## IV

We first address the purpose of DAPA and the proceedings it authorizes. The purpose of the act is to protect persons from all forms of domestic abuse. 9 N.N.C. § 1604 (1995 ed.). The act limits the authority of the family courts to addressing violent and abusive *conduct*. This Court in *Morris v. Williams*, 7 Nav. R. 426 (Nav. Sup. Ct. 1999), made clear that the act is not designed to address land dispute matters. We stated that

> the clear thrust of the Act is to protect people from harm. It is not designed to be used to argue land dispute matters. While disputes over land may trigger conduct arising to the level of domestic abuse, the Navajo Nation courts are only empowered to deal with the conduct. They cannot decide land titles or boundaries under the act. 7 Nav. R. at 427-28.

Therefore, a family court cannot in a DAPA proceeding decide land dispute issues, including homesite leases and ownership of structures attached to the land.

The NRDVP and the DAPA govern what a family court can do. The court can grant exclusive possession of a place of residence to the victim and it can order the perpetrator away from that place of residence as well as give temporary possession of personal property to a victim, each for a specified and limited period.[3] Nav. R. Civ. P. 2.15(c), (d) (1989 ed.) and 9 N.N.C. § 1660 (A)(2), (A)(3) and (A)(11) (1995 ed.). A court can prohibit by a DAPA order the transfers, encumbrances or dispositions of specified property mutually owned or leased by the parties. Nav. R. Civ. P. 2.15 (g) (1989 ed.) and 9 N.N.C. § 1660 (A)(12) (1995 ed.). These sections do not give the court authority to divest another party of a homesite

---

3  The granting of the possession of a residence to a victim is not the same as granting ownership of the house.

lease or a home attached to land granted to him or her by a previous court order.

## V

The second of our concerns is the court's modification of the divorce decree. In our courts, a litigant has remedies to obtain relief from a judgment. The litigant has an appeal process after a final decision has been entered by the court. This process is governed by Navajo Rules of Civil Appellate Procedure.

Relief is also provided by Nav. R. Civ. P. 59 and 60. These rules require the moving party to file a separate motion within a specified time stating specific grounds provided under Rule 59 and 60 along with supporting facts. Sheppard did not comply with Rule 59 or 60 at any time before she went to the family court to request the DAPA orders. A party cannot amend, modify or vacate a divorce decree through a DAPA proceeding, but must follow Rule 59 or 60 under the Navajo Rules of Civil Procedure The modification of the divorce decree therefore was an abuse of discretion.

## VI

We therefore vacate the portions of the DAPA orders that transfer the homesite lease and the ownership of the house. The ownership of the house remains with Dayzie pursuant to a divorce decree entered upon a stipulation of the parties. The "reassignment" of the homesite lease also is hereby vacated and remains with the record holder.