*Julia BEGAY*
Petitioner-Appellee
*vs.*
*Jessie Ray CHIEF*
Respondent-Appellant

In the Supreme Court of the Navajo Nation

No. SC-CV-08-03

May 18, 2005

Genevieve K. Chato, Esq., Kayenta, Navajo Nation, for Appellant.

Samuel Pete, Esq., Shiprock, Navajo Nation, for Appellee.

Before FERGUSON, Acting Chief Justice, and L. JOHNSON, Associate Justice.

This case concerns whether a person married through a traditional wedding ceremony must receive a decree by a Navajo Nation court to be validly divorced within the Navajo Nation. We hold that the Navajo Nation Code requires a divorce decree, and therefore vacate the Kayenta Family Court's decision.

I

The relevant facts are undisputed. Appellant Jessie Ray Chief and Appellee Julia Begay are both enrolled members of the Navajo Nation. Mr. Chief married Dorothy Farland by traditional ceremony in 1978. Some time after 1978, Mr. Chief left Ms. Farland, taking his saddle and blanket from their home. Mr. Chief did not seek or receive a divorce decree from a Navajo Nation court. He subsequently married a second person, Myrtle Dayzie. They received a divorce decree from their marriage in 1985. Neither Ms. Farland nor Ms. Dayzie are parties to the case. Mr. Chief and Ms. Begay began to live together in Phoenix, Arizona in 1985. They moved to Kayenta within the Navajo Nation. They produced one child and operated several businesses together. They never had a traditional, church or civil marriage ceremony performed.

After they separated, Julia Begay filed a petition for a validation of marriage in the Kayenta Family Court, claiming a "common law" marriage under 9 N.N.C.

§ 3(E) (1995).[1] Jessie Ray Chief filed a motion to dismiss the petition, asserting that the court could not validate any alleged marriage, because he had never been divorced legally from Dorothy Farland. According to Mr. Chief, the Navajo Nation Code requires a divorce decree from a Navajo Nation Court for a divorce from a traditional marriage to be legal. Mr. Chief cited a decision of the Navajo Court of Appeals, *In re Validation of Marriage of Slowman*, 1 Nav. R. 141 (1977), asserting that it was binding precedent for the rule that a Navajo Nation court must issue a divorce decree from a traditional marriage for a court to validate a subsequent marriage.

The Kayenta Family Court denied Mr. Chief's motion to dismiss, ruling that he legally divorced Dorothy Farland by Navajo custom. According to the court, the Navajo Common Law concepts of *yo de yah* and *tse ha maz* applied. Under these concepts, the court concluded that a traditional divorce occurred when Mr. Chief left with his saddle and blanket. The court ruled that no binding precedent controlled the case, alleging that Mr. Chief only cited non-binding district courts cases. The court also ruled that the provisions of the Navajo Nation Code concerning marriage and divorce are ambiguous. Therefore, according to the court, the Code did not preclude the recognition of a traditional divorce. The court then considered the merits of the case, ruling that Mr. Chief and Ms. Begay had a valid "common law" marriage. Mr. Chief appealed to this Court.

## II

The issue in this case is whether a person married through a traditional wedding ceremony must have received a decree by a Navajo Nation court to be legally divorced within the Navajo Nation.

## III

### A

The conclusion of the Kayenta Family Court that a court decree of divorce from a traditional marriage is not required is a legal one which we review *de novo. Judy v. White*, 8 Nav. R. 510, 528 (Nav. Sup. Ct. 2004). We give no deference to the Family Court, and review the question based on our interpretation of the relevant law.

### B

The main issue in this case is whether a court must issue a divorce decree from a traditional marriage. Mr. Chief argues that he could not have legally married

---

[1] A "common law" marriage under the Navajo Nation Code is different than one arising out of a traditional wedding ceremony. *See* 9 N.N.C. § 3(D), (E). A "common law" marriage is defined as a marriage, other than through the signing of a marriage license before witnesses or the performing of a church, civil, or Navajo traditional ceremony, that includes four necessary elements: 1) a present intention of the parties to be husband and wife, 2) a present consent between the parties to be husband and wife, and 3) actual cohabitation, and 4) an actual holding out of the parties within their community to be married. 9 N.N.C. § 3(E).

Ms. Begay because he was never divorced validly from his traditional marriage to Dorothy Farland. Ms. Begay disagrees, arguing that Mr. Chief divorced Ms. Farland by Navajo custom, and therefore was not still married during the relationship at issue in this case.

The question in this case involves two provisions of Title 9 of the Navajo Nation Code, Sections 4(A) and 407. Section 4(A) states that to contract a marriage within the Navajo Nation, both parties must be unmarried. 9 N.N.C. § 4(A) (1995). When, as here, either party has been previously married, that Section requires that "the marriage must have been dissolved by . . . a valid decree of divorce." *Id.* (emphasis added). Section 407, appearing in a separate chapter specifically covering divorce, states that "[n]o person, married by Tribal custom, who claims to have been divorced shall be free to remarry until a certificate of divorce has been issued by the Courts of the Navajo Nation." 9 N.N.C. § 407 (1995) (emphasis added). The Kayenta Family Court concluded that Section 4(A), passed by the Navajo Nation Council after Section 407, creates an ambiguity, because Section 407 refers to a decree issued by a court, while Section 4(A) refers only to a "decree."

Curiously, the Kayenta Family Court did not mention our opinion in *In re Validation of Marriage of Slowman*, which held that a court decree is necessary for a divorce to be valid. 1 Nav. R. 141, 143 (Nav. Ct. App. 1977). In that opinion we[2] concluded that the plain language of Section 407 requires a court decree. *Id.* We denied a validation of marriage because one party had never received a court decree of divorce from a previous marriage. *Id.* at 143-44. The Kayenta Family Court omitted *Slowman* from its analysis, even though Mr. Chief cited it and discussed it in a document submitted in that court. Reply to Petitioner's Objection to Respondent's Motion to Dismiss, Index Listing No. 55, at 3-4. According to the Kayenta Family Court, Mr. Chief had only cited district court cases, and that "these decisions are merely persuasive." Order of February 5, 2002, Index Listing No. 75, at 7-8. Whatever the reason for the oversight, the Kayenta Family Court did not consider a potentially binding precedent from this Court. We therefore must consider it ourselves without any guidance from the Family Court.

**D**

The binding effect of *Slowman* depends on its reasoning. As we recently stated in *Allstate Indemnity Co. v. Blackgoat*, our current rules of statutory interpretation

[2] Slowman was issued by the Navajo Court of Appeals, which the Navajo Nation Council replaced in 1985 with the Navajo Nation Supreme Court. As it was the highest appellate body up to the creation of the Supreme Court, and cases pending before that court were transferred to this Court, Navajo Nation Council Resolution No. CD-94-85, Resolved Clause 4 (December 4, 1985), we apply decisions of the Court of Appeals as our own. *See, e.g., Fort Defiance Housing Corp. v. Allen*, 8 Nav. R. 492, 498 (Nav. Sup. Ct. 2004) (following Navajo Court of Appeals opinion concerning time for appeal in Forcible Entry and Detainer cases).

require that we interpret ambiguous language consistent with Navajo Common Law. 8 Nav. R. 636 (Nav. Sup. Ct. 2005); *see also Tso v.Navajo Housing Authority*, 8 Nav. R. 548, 557 (Nav. Sup. Ct. 2005). This means that a previous interpretation of statutory language is not binding if the language is unclear and if we did not consider Navajo Common Law in our analysis. *See Eriacho v. Ramah District Ct.*, 8 Nav. R. 617, 625 n. 1 (Nav. Sup. Ct. 2005). However, we still apply a statute's plain language when that language is clear. *Tso*, 8 Nav. R. at 557 n. 1 (collecting cases). This means that case law stating the plain meaning of statutory language still controls the outcome of later cases. *See Fort Defiance Housing Corp. v. Allen*, 8 Nav. R. 492, 498–99 (Nav. Sup. Ct. 2004).

Under these rules, we conclude that *Slowman* controls this case. Here, if there is an ambiguity, the Kayenta Family Court appropriately looked to Navajo Common Law concerning divorce. As we used a plain language analysis in *Slowman*, however, that holding controls.[3] The language of Section 407 is not ambiguous, as the clear meaning of the statute means that a person must receive a court decree of divorce from a traditional marriage before he or she may marry within the Navajo Nation.

This conclusion was not reached easily in this case. Though we do not condone the activities of Mr. Chief, we are bound to apply the clear and valid policy decisions of the Navajo Nation Council, as we did in *Slowman* twenty-eight years ago. *See Tso*, 8 Nav. R. at 557 n.1. This Court ultimately is not the policy-making body for the Navajo Nation. *See id.* Ms. Begay does not allege that the Section 407 violates a fundamental right under our Navajo Bill of Rights and Indian Civil Rights Act. Absent some suggestion that the statutory requirement for a court decree is somehow invalid, instead of merely ambiguous, we have no choice but to apply it to this case. Ms. Begay and others in her situation may seek a statutory change to allow the courts to recognize other methods of divorce.

## IV

Based on the above, the Kayenta Family Court erred in validating a marriage between Ms. Begay and Mr. Chief. As Mr. Chief was never validly divorced under Navajo Nation statutory law, he cannot be married to Ms. Begay. We therefore

3  In *Slowman* we did not explicitly refer to the "plain language" of the statute, but simply said that "[under] . . . Section [407], a divorce certificate granted by a Navajo court is specifically required even for marriages contracted by customary or traditional ceremony." 1 Nav. R. at 143. Absent any reference to other rules of statutory interpretation, we take our discussion in *Slowman* to be a plain language analysis. However, even assuming *Slowman* is not a plain language case, and therefore not binding, Section 407 is directly on point, and states clearly that parties who were married through a traditional ceremony must receive a court decree for any alleged divorce to be recognized. Nothing in Section 4(A) contradicts this, the only difference being that the word "court" does not appear before "decree." The absence of "court," without more, does not make the word "decree" unclear. When read together, the Council clearly intended that divorces must have a court decree to be valid.

VACATE the decision of the Family Court. We do not say that Ms. Begay lacks any valid claim against Mr. Chief. There may be other claims that do not require a valid marriage. We leave that for the lower court to consider in a new case. This case is closed.

