OPINION

This case concerns an alleged “common-law” marriage that Appellant Lilirae Smith (Smith) sought to validate in the Shiprock Family Court (Family Court) after the death of her alleged husband, Leonard Begay, Sr. (Begay). The Court concludes there was a common-law marriage, and vacates the Family Court’s judgment denying the validation.
I
This case concerns a relationship between Smith and Begay. According to the evidence presented to the Family Court, Smith and Begay began their relationship before Smith’s divorce from another man. They took out joint debts, registered and insured a vehicle together, had a joint bank account, took care of livestock together at a sheep camp, and represented to several relatives, including his sister that they considered themselves married, though they never had a marriage ceremony performed. However, evidence also was presented to the Family Court that he did not identify Smith as his wife to his children, and that he also had intimate relations with his ex-wife during this time.
Begay died, and Smith filed a petition to validate a “common-law” marriage under the Navajo Nation Domestic Relations Code. 9 N.N.C. §§ 4, 9 (1995). Begay’s daughter from a prior marriage, Appellee Johanna Billsie (Billsie), opposed the petition. After the Family Court rejected the parties’ stipulation recognizing the marriage, the Court held a hearing on the merits of the petition. After hearing from witnesses and reviewing documentary evidence Smith submitted, the Family Court ruled there was “very limited information” and “very little evidence” to fulfill the requirements for a common-law marriage. Judgment at 2.
II
The issue in this case is whether there was sufficient evidence to validate a common-law marriage when a) the parties began their relationship before one party was divorced, allegedly in contravention of Navajo traditional law, b) a Grazing Committee official testified without bringing documents supporting his testimony, c) only relatives of the petitioner and decedent testified.
III
The standard of review in this case generally is de novo, as whether there is sufficient evidence to fulfill the four statutory elements is a question of law. See Dale Nicholson Trust v. Chavez, 5 Am. Tribal Law 365, 369-70, 2004 WL 5658105, **3-4 (Navajo 2004) (stating de novo standard of review for legal questions). However, the Court reviews whether certain evidence was appropriately rejected or discounted for an abuse of discretion. See Navajo Nation v. Crockett, 7 Nav. R. 237, 243 (Navajo 1996). One type of abuse of discretion is reliance on erroneous reasons to bar or discount evidence.
*770 IV
As established by the Navajo Nation Code, a “common-law” marriage is a marriage that includes four necessary elements: 1) a present intention of the parties to be husband and wife, 2) a present consent between the parties to be husband and wife, 3) actual cohabitation, and 4) an actual holding out of the parties within their community to be married. 9 N.N.C. § 3(E) (2005). It differs from other types of legal marriage in that there is no ceremony, traditional or otherwise, to establish the marriage. See Begay v. Chief, 6 Am. Tribal Law 655, 2005 WL 6235870, *1 n. 1 (Navajo 2005). It was unknown in Navajo tradition, and this Court previously rejected it as a legally binding marriage. See In re Validation of Marriage of Francisco, 6 Nav. R. 134, 135, 139 (Nav.Sup.Ct.1989). The Court noted that under traditional Navajo thought “unmarried couples who live together act immorally because they are said to steal each other,” and therefore the Navajo people “did not approve of or recognize common-law marriages.” Id, at 135. The Court also suggested that the marriage provisions of the Code were outdated, and should be revised. Id. at 140.
After Francisco, the Navajo Nation Council deemed it necessary to pass a resolution that, among other things, recognized common-law marriage and set out the four statutory elements to define it. See Navajo Nation Council Resolution No. CAP-36-93 (April 23, 1993). In the preamble to the Resolution, the Council explicitly referenced the Court’s revision suggestion in Franscisco and stated the legislation was meant “to reflect the present intentions of the Navajo Nation government regarding marriages and remove the impediments to expeditious proof of a valid marriage under Navajo law.” Id., Whereas Clause 7.
The Family Court rejected the validation of the alleged common-law marriage on several grounds that Smith alleges are wrong. The court concluded generally that there was “very little evidence” that there was a marriage. The Family Court also stated that the marriage was invalid because Smith and Begay began their relationship before her divorce, allegedly “contrary to Navajo culture and tradition on marriages.” Judgment at 3. The court rejected, or at least discounted, the testimony of Samuel Benally, a Grazing Committee member, stating that the official had failed to bring any documents indicating that the couple lived together. The Court also rejected the testimony of witnesses that were “dose relatives” and “not those from their community who could vouch for them.” Judgment at 3. The: Court considers each reason, and concludes that the Family Court erred in finding there was no marriage.[1]
A
The court erred in rejecting the; common-law marriage due to the alleged; violation of traditional law. As “common J *771 law marriage exists only by statute, the elements to fulfill and the prohibitions that may invalidate a common-law marriage are defined exclusively by statute. The Code includes several reasons for rejecting a marriage, including prohibitions deriving from traditional lawT, such as being the same clan. See 9 N.N.C. § 5(D) (2005). It is reasonable to infer that the inclusion of certain traditional prohibitions in the Code but the exclusion of others means that the Council intended those reasons to be the only traditional impediments to a lawful common-law marriage. Of 2A Sutherland, Statutory Construction, 47:23-25 (discussing rule of statutory construction, “expressio unius est exclusio a.lieri-us” (“The inclusion of one thing implies the exclusion of another”)). Neither the fact that Smith and Begay began their relationship before her divorce nor the fact that Begay may have had intimate relations with his ex-wdfe are not listed in the statute.
B
The court also erred in discounting the testimony of the Grazing Committee member, a local naat’ áanii, simply because he had not brought any government documents, such as a livestock tally, to support his testimony. It is unclear whether the court meant to reject his testimony outright as evidence of the marriage, or if it meant merely to give it less weight due to the absence of documents. It appears that Mr. Benally testified concerning Begay’s belief that he was married to Smith. That testimony requires no documentation. The testimony of a local naat’ áanii that a man acted as a husband in the community, in and of itself, should be credible evidence unless there is substantive evidence to the contrary. A grazing official particularly knows who tends livestock at the sheep camps in the area, and does not need documents to establish that knowledge. Though it is the province of the court to decide what weight to give such testimony, and whether it bolsters one or more statutory elements of common-law marriage, it may not reject or discount it for an alleged lack of documentation. The court’s action therefore was an abuse of discretion.
C
The court also erred in rejecting testimony of clan relatives. In certain remote communities, it may be only clan relatives who are “the community” that can establish that the couple held themselves out as married under the fourth statutory element. While there may be less weight given to the testimony of relatives if there is evidence to believe they may be biased, the mere fact that they are related to the petitioner or respondent does not negate their testimony. This is particularly true in the context of validation of marriage cases, where such relatives may be the only sources of information on the intent of the parties. Indeed, in Dine society the recognition or acceptance by a close sibling that the woman living with her brother at the family's sheep camp is caring for the family livestock is substantial evidence that the woman is an in-law (azháá’áád nil>¡). Absent other reasons to discount such testimony, the outright rejection of it was an abuse of discretion.
I).
Based on the evidence submitted by Smith, including the evidence erroneously rejected or discounted, the court erred in concluding there was insufficient evidence of a common-law marriage. Whether there is sufficient evidence to establish the elements of common-law marriage depends on the standard of proof the petitioner *772 seeking validation must fulfill. The statute only states that the petition must prove “to the satisfaction of the court that he or she and his or her alleged spouse were recognized as man and wife in their community.” 9 N.N.C. § 10(B) (2005). The statute is then silent on what standard should apply, requiring this Court to establish a standard.
As common-law marriage is not recognized under Navajo tradition, for such marriages to be validated under the statute, the Court concludes that each statutory element must be supported by substantial evidence. From this case forward, validation of marriage petitioners must submit evidence that meets that standard for a common-law marriage to be valid. This standai’d does not mean that there cannot be any evidence against the conclusion that there was a marriage. However, evidence is not substantial if it is overwhelmed by contradictory evidence. Furthermore, a mere conclusion without an analysis linking the supporting evidence to each statutory element is not substantial evidence.
Under this standard, the Family Court should have validated the marriage. The evidence demonstrates that Smith and Begay took out joint debts, registered and insured a vehicle together, had a joint bank account, and took care of livestock together at a sheep camp. This evidence, in addition to the evidence erroneously rejected or discounted from the Grazing Committee member and the relatives, when taken all together, is sufficient to fulfill the four statutory elements. That Begay did not identify Smith as his wife to his children, though evidence against the conclusion that there was a marriage, does not, by itself, mean there was no marriage. Parents may say certain things or keep from their children certain matters which they do not do with other relatives or neighbors. The Court also notes that the Family Court buttressed its decision not to validate the union because Begay went back to his ex-wife for intimate relations while he was with the petitioner. This evidence again does not mean there was no marriage. There is otherwise uncontra-dicted evidence that he identified her as his wife to other relatives and members of their community. The Family erred in denying the validation.
V
Based on the above, the Court VACATES the Shiprock Family Court’s judgment and REMANDS the case for the court to issue a judgment validating the common-law marriage. Immediately upon receipt of the mandate, the Family Court shall issue the validation order.

. Smith also contends that the Family Court wrongly rejected the stipulation recognizing the marriage. The Court interprets the Family Court’s rejection of the stipulation as a decision that the trial court must independently determine whether or not the statutory elements have been fulfilled and not rely solely on a stipulation. Because the Court concludes the Family Court's decision on the merits is incorrect, it is not necessary to decide that issue. However, the Court notes that Billsie stipulated to the marriage at least; once during the proceedings, but then took: the position on appeal that the denial of the validation was appropriate. Though problematic. the Court reserves the question whether a party to a stipulation that has been filed; with the court can later repudiate that stipulation and take the opposite position either in the lower court or on appeal.