OPINION

Appellant seeks an appeal of a decision of the Crownpoint Family Court contained in a Final Guardianship Decree requiring DNA testing to legally establish his paternity of four children he has always openly regarded as his own and further requiring the parties to pay the expenses of the guardian ad litem. The Court reverses and remands.
I
BACKGROUND
This matter concerns a May 5, 2008 filing of a petition by Marlene Sandoval (Appellee) for guardianship and temporary custody over her four grandchildren T.S.E.J., B.L.J., M.B.J. and A.M.A., whose mother Earlene Rose Herrera (mother) passed away on April 19, 2008. Named as respondent was the natural father, Bevis Bahe John (Appellant), whose paternity over the children had not been legally declared. Appellant filed objections and counterclaims for custody and visitation. However, at the final hearing on October 8, 2009, Appellant stipulated and consented to Appellee’s guardianship of the children and asked only for visitation. The parties had informal visitation in place, allowing father to call and drop in periodically, but could not agree on court-ordered visitation.
The trial court stated that Appellant had no rights of visitation without a legal determination of paternity. Therefore, Appellant requested to be declared the natural father in the guardianship proceedings, while Appellee requested that paternity be resolved in a separate proceeding. With *59 out ruling on the issue, the family court proceeded to hear testimony on paternity and visitation.
There was no dispute in the pleadings, evidence, and reports that Appellant is the natural father. The pleadings of both parties named Appellant as the natural father of all the children. Appellee testified that the children “know who their father is.” ('Transcript of October 8, 2009 Hearing, p. 19); Appellee also acknowledged in open court that he was the father (Transcript, p. 8), discussed his past contact which had been limited for a period of time due to incarceration, and described details of when each child had been conceived (Transcript, p. 12-14). No other person is alleged to be the father of the children. Appellant’s name appears as the natural father on the birth certificate of the second oldest child, B.L.J., which was attached to the Petition, and on two New Mexico Ac-knowledgement of Paternity forms for the two youngest children M.B.J. and A.M.A. which was signed and notarized by mother but were not signed by him. Three of the four children carry his last name. Finally, the Guardianship Home Study filed by Social Services on June 30, 2008 and the Guardian Ad Litem (GAL) Report of October 2, 2008 both identify Appellant as the natural father without dispute and raised no safety or other issues negatively impacting his contact with the children. The GAL report recommended a grant of visitation “when the children request to see [Appellant] with advance notification to [Appellee].” GAL Report, p. 4. The Social Services report recommended no limitation.
At the final hearing, the court-appointed GAL, who was also a Navajo Nation Bar Association (NNBA) member and former judge, insisted on genetic testing due to her interpretation of the paternity law. The family court permitted her to cross-examine Appellee. The GAL asked over two dozen questions of Appellee focused on a statement in Appellee’s petition in which she had stated that Appellant “has specifically denied paternity with the two youngest children.” Petition, p. 3. Appellee testified that she had overheard mother in a telephone call speaking with Appellant about his refusal to claim paternity over the two youngest children. Appellee also confirmed that Appellant’s name does not appear on three of the children’s birth certificates.
Appellant testified, earlier in the proceedings, that he had been incarcerated when mother had brought the Acknowl-edgement of Paternity forms for the two youngest children for him to sign, and had been advised by a criminal lawyer not to sign at that time, but that he now wished to sign the forms.
At the conclusion of the hearing, the parties stipulated that father will have contact with one child, B.L.J., for whom he acknowledged paternity and is listed as the natural father on child’s birth certificate. The family court informed the parties that “because paternity is questioned and has been raised. Rather than having [Appellant] filing a new petition. The court will just order [a paternity test] in this proceedings.” Transcript, p. 29. Accordingly, the court verbally ordered paternity testing for all four children.
Following the hearing, the GAL filed a motion for reimbursement of her expenses.
On October 22, 2008, the family court issued a Guardianship Decree awarding guardianship of the children to Appellee, finding “the putative father to the three minor children, T.S.E.J., M.B.J., and A.M.A. is Bevis Bahe John, he signed a Statement of Paternity for only one child, B.L.J.,” and stating that “any visitation and all other issues concerning this case will be dealt with in a separate proceed *60 ing.” Guardianship Decree, p. 1-3, That same day, the court also issued an order requiring Appellant to undergo paternity testing for all four children.
Appellant filed post-judgment pleadings: a Notice of Withdrawal of Answer and Counterclaim and a Motion to Vacate the family court’s October 22, 2008 paternity testing order. On January 6, 2009, the court issued an Order denying his motions stating: “While it is true paternity was not contested in the pleadings, questions arose at hearing as to the paternity of at least two of the children, and because the biological mother is no longer available to testify, the Court finds it in the best interest of the minor children that paternity be definitely [established] once and for all.” January 6, 2009 Order, p. 2. The court also ordered the parties to equally divide the GAL’s expenses.
On February 4, 2009, Appellant filed a Notice of Appeal asserting that the family court erred by refusing to enter a declaration of paternity and by ordering the parties to pay the GAL’s expenses. Appellant asked that the Court remand the case to the family court so it can enter a paternity order based on the evidence currently in the record of the guardianship proceedings. Additionally, he filed a motion in the family court to stay the paternity testing pending an appeal, which was granted on February 23, 2009.
II
ISSUES
We review the following issues: (1) whether the family court abused its discretion in declining to legally declare paternity and/or award visitation on the basis of the evidence presented; (2) whether the GAL should have been allowed to perform the functions of an advocate in the proceedings; and (3) whether the parties may be compelled to reimburse the GAL’s expenses.
III
STANDARD OF REVIEW
We review these issues for abuse of discretion by the Family Court. Discretion is defined as the ability to act within certain boundaries of rules, principles and customs applied to the facts of the case. While judges have discretion, there are limits to that discretion. Discretion is limited by legal principles and must be exercised in conformity with the spirit of the law and adopted rules, to serve the ends of justice. Smith v. Kasper, 8 Am. Tribal Law 347 (Nav.Sup.Ct.2009) citing Sheppard v. Dayzie, 8 Nav. R. 430, 434, 5 Am. Tribal Law 374 (Nav.Sup.Ct.2004). Whether certain evidence was appropriately rejected or discounted is reviewed for an abuse of discretion. In re Marriage of Smith, 6 Am. Tribal Law 767 (Nav.Sup.Ct.2006) citing Navajo Nation v. Crockett, 7 Nav. R. 237, 243 (Nav.Sup.Ct.1996). One type of abuse of discretion is reliance on erroneous reasons to bar or discount evidence. Id.
IV
PATERNITY, CUSTODY & VISITATION
A. Navajo Law on Paternity, Custody and Visitation
In this case, a putative father objects to being asked to “definitely establish” his fatherhood to a scientific certainty through testing in the absence of dispute, with the result that meanwhile, his children are denied access and meaningful contact with him, and the parties are asked to bear the costs and invasiveness of such testing. We agree that our laws do not require the use of testing in the absence of a dispute; nor *61 do our laws prohibit temporary custody or visitation to be awarded on the basis of presumptions.
We have previously noted that there are no Navajo presumption statutes. Consequently, Navajo paternity law has developed through our common law. As the common law regarding paternity, custody and visitation is susceptible to misinterpretation, as shown in this case, we provide herein an overall clarification.
In Davis v. Crownpoint Family Court, 8 Nav. R. 279, 4 Am. Tribal Law 628 (Nav.Sup.Ct.2003), this Court prohibited the removal of minor children from the reservation by a putative father pursuant to a temporary custody order in a Domestic Abuse Protection Act (DAPA) proceeding. In that case, the children’s mother said that permanent harms would befall the children due to their being taken from their school, relatives, and reservation which was the only life the children had ever known. The Court in Davis was concerned that substantial changes to children’s lives were being imposed by a putative father whose paternity had not yet been legally determined. Davis is limited by its own language only to awards of temporary custody pursuant to temporary protection orders in DAPA proceedings, and has no impact on temporary or permanent awards of custody in non-DAPA proceedings.
That same year, in Sombrero v. Hon. Angela Keahnie-Sanford,[1] 8 Nav. R. 360, 4 Am. Tribal Law 674 (Nav.Sup.Ct.2003) this Court extended Davis and required a legal determination of paternity before permanent orders of visitation may be awarded, regardless of the type of proceeding. However, Sombrero also provided, in a footnote, a clarification that presumptions alone are sufficient to award temporary custody or visitation. Specifically, the Court stated: “The court may make a presumptive determination of paternity based on sufficient findings, but the mother may challenge the presumption at a subsequent hearing. In the meantime, the court may enter interim and temporary orders for visitation and custody based on the presumptive determination.” Sombrero, at 364, fn. 1, 4 Am. Tribal Law 674. The Sombrero footnote is the prevailing law on temporary custody and visitation.
The best interest of the child standard requires ongoing, meaningful contact between children and their families, including extended families. In In the Matter of A.M.K., 9 Am. Tribal Law 191 (Nav.Sup.Ct.2010), the Court admonished the family court after it permitted a child to be removed to Canada by her father without first ensuring continued contact between the child and her Navajo relatives whose guardianship petition had been denied. Id., 9 Am. Tribal Law at 201-02. By the time the matter was appealed, the whereabouts of the child in Canada was unknown. The case was remanded in order for the trial court to find the child and see if meaningful contact between the child and her family members, culture, and people could be re-established.
We have stated, “Knowing one’s point of origination ... is extremely important to the Navajo People, because only then will a person know which adoone’e (clan) and dine’e (people) the person is.” A.M.K. citing Davis v. Means, 7 Nav. R. 100, 103 (Nav.Sup.Ct.1994). We first emphasize that questions of paternity were not raised in A.M.K. and were not addressed by the Court. By “knowing one’s point of origin,” the Court was addressing the right of the child for meaningful continuation of relationships according to ak’éí *62 (kinship). In order to know who they are and their place within the world, a child must be given the opportunity to grow up within familial and clan relationships. A child must have “meaningful contact” and “meaningful visitation” with his or her relatives, culture and people in order to know Ms or her place in the entire clan and extended family. A.M.K. at 201-02.
The family court in A.M.K. had determined that the father had the right to do what he wished with his child without considering the child’s relationships with other family members. The family court had applied the principle of the primacy of parental rights that is the law of many of our sister jurisdictions, but which is not our law. In A.M.K, this Court established, once and for all, that “[ijnsofar as there are rights, they reside with the child. Our courts will enforce the children’s rights in custody and ... only incidentally provide for the rights of the parents, where they are in harmony with those of the children.” A.M.K. at 200 citing Burbank v. Clarke, 7 Nav. R. 369, 371, 2 Am. Tribal Law 424 (Nav.Sup.Ct.1999), We further stated: “Due to the emphasis on extended family under Navajo Nation law, we find that custodial contests involving extended family require the same treatment [as those involving a nuclear family], whether or not visitation has been specifically requested.” A.M.K., at 202.
Taken together, the above cases emphasize the child’s right to relationships that maximize his or her access to parents, siblings, extended family, culture and people and further emphasize the treatment of family as a whole. This is in accordance with our unique Dine law, where “our children are the most valuable gift of creation” to our clans and overall community. 9 N.N.C. § 1702(A).
B. Presumptions
 In the Navajo Nation, a married man is the presumptive father to children born to the marriage and is held responsible for the rights and obligations of parenthood from the time of the birth of a child without the need for legal paternity findings. Davis v. Crownpoint Fam. Ct., 8 Nav. R. 279, 286, 4 Am. Tribal Law 628 (citing Davis v. Davis, 5 Nav. R. 169, 171 (Nav.Sup.Ct.1987)). As to an unmarried man, “the court may apply presumptions of paternity,” and “should weigh all the evidence presented, including rebuttals to the presumption.” Id. at 286, 4 Am. Tribal Law 628.
In Davis, we referenced New Mexico’s presumption statute in which a father’s written acknowledgement of paternity is considered a legal finding of paternity without further findings necessary. Id. at 286, fn. 1, 4 Am. Tribal Law 628, citing Section 4-11-15 NMSA 1978. We note here that such an acknowledgement is sufficient to administratively establish parentage in the Navajo Nation Office of Hearings and Appeals. The Navajo Nation Child Support Enforcement Act (the “Act”) at 9 N.N.C. § 1701 et seq., enacted for purposes of administratively establishing parentage and child support obligations through the Office of Hearings and Appeals (OHA), relieves an administrative hearing officer from conducting any further inquiry into paternity when the absent parent has acknowledged parentage. Pursuant to 9 N.N.C. § 1708(B)(1), an alleged absent parent who has stipulated or acknowledged his or her parentage of the child would have his parentage administratively established, and may be imposed child support obligations.[2] Therefore, we *63 hereby hold that our courts are required to treat the administrative establishment of paternity as conclusive without further ado, since it is expressly provided for in our statutory law.
In Davis, the Court stated that a “mere claim of biological parenthood is not enough to entitle a parent to child custody.” Davis at 286, 4 Am. Tribal Law 628. However, a signed and notarized acknowl-edgement is more conclusive than a “mere claim.” Where the alleged absent parent has voluntarily stipulated to or acknowledged paternity and the claim is not rebutted, we state uneategorically that judicial time and resources may not be unnecessarily spent in further investigations, including testing. Such an acknowledgement creates a presumption of parentage pursuant to which a legal determination of paternity may be made absent rebuttal. The same is true if a father’s name is on a child’s birth certificate duly provided to the Court that is making a paternity determination. See Davis at 286, 4 Am. Tribal Law 628. Additionally, presumptions may be established by looking to all factors in the best interest of the child, such as a parent-child relationship, and other evidence, Id.
C. Wótashke ’
It is in the best interest of children to have knowledge of their father and to be able to point to him as someone who desired to be their father without needless raising of questions of paternity that serve only to shake the stability of the family. Our courts must ensure a child does not consider himself or herself wótashke ’ (fatherless child). In this case, where only one man has stood up to be the children’s father and, furthermore, has been taken to be the father by the mother and family, the Court has no business investigating further if the result would be to render that child fatherless.
Other jurisdictions have faced similar problems and have resolved them in favor of the best interest of the child. In In re Parentage of Liam. J.H., 119 Wash.App. 1019, 2003 WL 22701581 (Wash.App.Div. 1, 2003), the Washington Court of Appeals, Division One, reversed a trial court finding that Sean G. was not the father of Liam after testing proved that Sean G. was, genetically, not Liam’s father. In that case, Liam had been born after the marriage between Sean G. and Liam’s mother ended, but within a statutory period where the husband may still be presumed to be a child’s father. Sean G. wanted to be declared Liam’s father in spite of the possibility that Liam’s natural father was a one-night stand whose whereabouts was now unknown. The Washington appellate court nullified the paternity test and reinstated the statutory presumption, stating that “it would be of psychological advantage to Liam to be able to point to Sean G. as his father.” It further stated that, in ordering a paternity test in the face of no dispute, the trial court had “deprived Liam of the legal right to point with pride to the only man who has ever truly loved him as a father loves a child.” Id. at 1029.
Regarding accuracy of testing, that court stated that in placing the greatest weight on the presumption favoring biological accuracy in the determination of paternity, in the face of other presumptions, the *64 best interest of the child standard was not served.
... it is possible that in some circumstances a child’s interests will be even better served by no paternity determination at all. The best interests of the child standard does not entitle a court to presume that paternity determination is automatically in the child’s best interest. Therefore, absent a showing that such determination is in fact within the child’s best interests, this standard cannot be invoked on behalf of someone other than the child.
Id. at 1031 (internal cite omitted).
The above Washington case applies principles of compassion and realistic comprehension of a child’s actual needs. Our courts, acting in parens patriae, treat minors as our own children and must address each child’s need for an intact family. We must strive to prevent, or create, situations in which a child is left without a family.
In this case, the evidence overwhelmingly creates a presumption that Appellant is the father of the children. Appellant has plainly rebutted allegations that he denies his parentage. Appellant has asked permission to sign acknowledgments of paternity forms previously signed by mother concerning the two younger children, and should be permitted to do so for purposes of adding his name as natural father to their birth certificates. He is the presumptive father of all the children in the absence of a paternity dispute. Specifically in this case, three of the children bear his last name;[3] his name is on B.LJ.’s birth certificate; both he and mother acknowledge his fatherhood of M.B.J. and A.M.A.; and he has acknowledged T.S.E.J. in open court and is further, taken to be the father by the family and the children.
The family court failed to properly apply the rules, principles and customs established by our common law with respect to paternity and visitation to the facts of the case. The court discounted evidence of paternity and required testing in the absence of a dispute, when such a conclusive standard is not required. Additionally, in considering the best interest of the children, the court failed to consider other factors, like mother’s sworn statements of Appellant’s paternity, the extent to which the children are said to be certain that Appellant is their father, and the disabilities of being wótashke ’ (fatherless child). In so doing, the family court erred, arising to an abuse of discretion.
V
GUARDIAN AD LITEM
In this case, the family court appointed a GAL who is a NNBA member, and has granted the GAL request for compensation. Rule 5(A) of the Navajo Pro Bono Rules provides that “[c]ourts may appoint NNBA members as guardians ad litem upon a specific finding that a legally trained guardian ad litem is required.” (emphasis added). Rule 4(B) then requires parents and relatives of the child to pay the compensation of a pro bono appointment of an NNBA member for a child. However, pursuant to Rule 8(C)(9), “No pro bono appointment may be made except in conformity with these rules, nor may any appointment be made except by persons authorized to do so by these rules.”
Here, the record shows that the family court appointed the GAL without making a *65 specific finding that an NNBA member was needed. The lapse is significant, because there is no provision that entitles GALs who are non-NNBA members to ask for compensation. Absent specific findings as required under our Pro Bono Rules, the appointment of an NNBA member is not justified, and the GAL must be treated as a non-NNBA member who is not entitled to compensation from the parties under any provision. Because the NNBA member was not appointed in conformity with the Pro Bono Rules, the family court erred in requiring the parties to reimburse the GAL’s expenses.
Additionally, the family court had permitted the GAL, a former judge, to cross examine Appellee, object to declaration of paternity, argue for genetic testing, and file motions in the manner of a legal practitioner. In Seaton v. Greyeyes, 6 Am. Tribal Law 737 (Nav.Sup.Ct.2006), we set guidelines as to the role of the GAL, stating that a GAL “does not act as an attorney, but is appointed by the court to advise it on the views of a minor or other individual incapable of expressing their wishes.” Id. (internal citations omitted). In no event is the GAL to function as an attorney, even if he or she is a NNBA member. The family court erred in permitting the GAL to perform attorney functions as a GAL.
Parties must not be asked to shoulder expenses for a GAL who has not been properly appointed, and for the performance of functions beyond her authority as GAL.
For the above reasons, the court erred in requiring the parties to pay the GAL’s expenses.
VI
CONCLUSION
For the foregoing reasons, we REVERSE the lower court’s decision and REMAND to allow Appellant to sign and notarize the acknowledgments of paternity forms already in the record so that Appellant may submit the forms to New Mexico Vital Records and Health Statistics for issuance of birth certificates that will include his name as father; for Appellant to be legally declared the father of all the above-named children,; and for further proceedings to establish visitation.

. We note that the GAL in this case was the Sombrero respondent.

. 9 N.N.C. § 1708(B)(1) provides:
Parentage. Unless the alleged absent parent has stipulated to his or her parentage of the *63 child! ren), the hearing officer shall determine whether the alleged absent parent is the parent of the child(ren). The hearing officer shall make a specific finding of fact regarding whether the alleged absent parent is the parent of the child(ren). The standard for proof of parentage shall be by clear and convincing evidence.
(Emphasis added).

. The youngest child was born after the relationship between mother and Appellant ended; however, there is no dispute that Appellant is also the father of this child.