No. SC-CV-36-97
# Supreme Court of the Navajo Nation

**Jane Burbank, Appellant,**
v.
**Tommy Clarke Sr., Appellee.**
**Decided January 26, 1999**

## OPINION

Before YAZZIE, Chief Justice, and AUSTIN, Associate Justice.

Cynthia Thompson, Esq., DNA-People's Legal Services, Inc., Chinle, Navajo
Nation (Arizona), for the Appellant; and Tommy Clarke Sr., *Pro se* Appellee,
Chinle, Navajo Nation (Arizona).

Opinion delivered by AUSTIN, Associate Justice.

We are asked to decide the following issues: 1) whether a minor becomes eman-
cipated in fact upon becoming a parent before reaching the age of majority; 2)
whether undivided child support payments for multiple children should be auto-
matically reduced pro rata when one of the children becomes emancipated or
attains the age of majority; and 3) whether the trial court abused its discretion when
it retroactively modified a child support order resulting in cancellation of part of
the past due child support amount. We hold as follows on each issue: 1) Under
Navajo Nation law, a minor does not become emancipated solely by the fact that
he or she becomes a parent; 2) Lump sum child support payments for multiple chil-
dren may not be reduced without the obligated parent filing a petition for modifi-
cation and the court affording the parties an opportunity to litigate the alleged
changed circumstances; and 3) A Navajo Nation court may not retroactively mod-
ify a child support order. We reverse and remand for further proceedings.

## I

A divorce decree entered on June 17, 1980 ordered Tommy Clarke Sr.
("Appellee") to pay $500 per month to Jane Burbank ("Appellant") for the sup-
port of their five minor children — four girls and one boy. *Clarke v. Clarke*, No.
CH-CV-142-80 (Chinle Dist. Ct. 1980). The decree was modified on December
29, 1981 after the Appellee failed to make a payment. It reduced his obligation
to a monthly lump sum payment of $200 for the support of all the children and
ordered him to make a one time payment of $500 to cure the delinquency. The
Appellee was further ordered to pay support "for the five (5) minor children of

the parties until they become 18 years of age or become emancipated." *Clarke v. Clarke*, No. CH-CV-182-81 (Chinle Dist. Ct. 1981). He made only one payment of $200 under this order.

The Appellant filed another action to compel the Appellee to provide support to his children, which produced a written settlement agreement dated August 15, 1983. On August 18, 1983, the Window Rock District Court incorporated the settlement agreement into its order, affirmed the Appellee's $200 per month child support obligation that was ordered on December 29, 1981, and added $100 more per month to satisfy $4,100 of unpaid child support. The court further recognized as enforceable all the conditions of the December 29, 1981 order. The Appellee paid nothing pursuant to the 1983 order.

On April 26, 1996, the Appellant filed this case in the Chinle Family Court to collect all of the accumulated, unpaid child support between December of 1981 and the date each female child turned eighteen years of age, and through May of 1996 for the son, whom she claimed would graduate from high school then. She asked for a $34,900 judgment against the Appellee.

The Appellee admitted he did not pay any child support, except for one payment of $200 in 1981. At the final hearing, he asked for a $40 reduction of his obligation, to be applied retroactively, each time one of the children became emancipated. The $40 figure comes from dividing the $200 monthly payment evenly among the five children. The Appellee did not file a petition for modification of his child support payments at any time during the long history of this case.

The Appellee argued that the girls were emancipated on the date they became mothers, at ages fourteen, fifteen, fifteen, and sixteen. He claimed his son was emancipated on the date he dropped out of high school, which was also before he turned eighteen. The record does not disclose whether any child was married, living independently of the parents, or self-supporting at the time of his or her claimed emancipation.

The family court accepted the Appellee's position and retroactively reduced his support obligation "by $40 as each child reached eighteen years of age or was emancipated." Finding No. 5. The court thereby eliminated from consideration a major portion of the unpaid child support amount that the Appellant sought. Each female was found emancipated upon the birth of her first child and the son upon attaining the age of eighteen. Finding No. 6. The court awarded the Appellant $13,000 for unpaid child support and ordered the Appellee to pay $100 each pay day until the judgment was paid in full. Order Nos. 2-3.

## II

In 1981, the Chinle District Court ordered the Appellee to pay child support to his five children until they either turned eighteen years of age or became emancipated. In 1997, the Chinle Family Court had to decide the novel issue of whether the sole fact of becoming a parent could emancipate a minor. The court

held in the affirmative. We find that the family court's holding on the emancipation issue contradicts Navajo common law.

The law that obligates every parent to support his or her offspring is integral to Navajo culture. This customary law underlies our modern child support jurisprudence. *Tom v. Tom*, 4 Nav. R. 12, 13 (1983). The rationale for the law is straightforward — a parent who brings a child into the world has a duty imposed by natural and spiritual law to provide for the child's needs until the child is capable of self-support. The law also helps to turn the Navajo concept of *'iina* ("life — past, present and future) into practical experience. Children are viewed as the future, ensuring the existence amd survival of the Navajo people in perpetuity.[1]

When a young Navajo person no longer needs the support, care, and custody of the parents, he or she is said to be a young adult. At this time, the person becomes self-supporting, independent, and free of parental control. The Navajo term for this is *t'aabii ak'inaaldzil* and basically means a person is self-supporting. That law applied to the subject of child support determines when a minor becomes emancipated. Navajos became self-supporting earlier in their teens during the first half of this century, because of the Navajo people's minimal reliance on wage income. In contrast, highly developed skills or a post high school education is a must today, if one is to become financially capable of earning a living. For that reason, it takes a minor longer to become independent and self-supporting today. This point may serve as a backdrop for our courts when handling emancipation questions.

The trial court must determine whether emancipation has taken place after examining all the facts and circumstances relevant to that issue. Although what constitutes emancipation is a question of law, the issue of whether a minor has actually become emancipated is a question of fact. Because of our rule that every parent is obligated to support his or her child either to majority or until the child is independent, free of parental control, and self-supporting, we place the burden to prove emancipation on the party asserting it. Nothing short of competent evidence must be used as proof.

In this case, the trial court found that the sole fact of giving birth had emancipated each female minor. The parties did not bring other facts relevant to the emancipation issue to light for the court's consideration. We do not agree that becoming a parent, by itself, is a sufficient ground for emancipation. It is a factor for our trial courts to consider, along with others, but is not alone dispositive of the emancipation issue.

The record before this Court does not disclose whether any of the girls was married, employed, living independently of the parents, or showed an intent to be free of parental control at the time of her purported emancipation. The con-

---

1. This lesson comes to us from a chapter in Navajo history called *'alnaashii jidezdaal* ("separation of the sexes"). Due to certain misdeeds of those in authority, the males and females of the tribe separated and took up residence on opposite sides of a wide, swiftly flowing river. After four years of separation, the wise men of the tribe reunited the genders after explaining that without propagation, the tribe would surely become extinct.

trary, however, is apparent from the record. The girls continued to receive the Appellant's full support following the birth of their children. We reverse the trial court's holding that the girls were emancipated, solely by the fact of becoming mothers, and remand for a new evidentiary hearing.

The trial court's order indicates that the son attained the age of eighteen on September 27, 1990. Other than this finding, the court did not make additional findings or legal conclusions establishing the circumstances of the son. We find the trial court's decision on the son impalpable. For example, did the court terminate the son's support as of September 27, 1990? If yes, then for what reasons? Fragmentary evidence seems to indicate the son might have still been attending school after he turned eighteen years of age. Due to the trial court's order lacking findings and legal conclusions, we reverse its decision on the son and remand for a new evidentiary hearing. *Help v. Silvers*, 4 Nav. R. 46, 47 (1983) (Navajo trial courts must make findings of fact and conclusions of law to support their judgments).

## III

The trial court reduced the amount of child support the Appellee had been ordered to pay by $40 each time it found one of the females had become emancipated. The modification was applied retroactively. We now establish the rule that a trial court cannot modify an original child support order in the absence of a petition asking it to do so. *See Tom v. Tom*, 4 Nav. R. at 14 ("a court order fixing child support can be modified at any time"); *see also Brown v. Brown*, 3 Nav. R. 239, 240 (Window Rock Dist. Ct. 1982) (a proper petition to modify a decree ordering child support payments must be filed before the court will address the matter). A properly filed petition seeking modification should contain the grounds for the requested relief and the other party should have an opportunity to present evidence in rebuttal. The petition also notifies the payee that the obligated parent intends to seek modification of the child support order. In this case, the Appellee did not file a petition to modify the August 18, 1983 order, which set his child support payments at a lump sum of $200 per month for the support of all five children. We find that the trial court erred in modifying the original 1983 order.

Where a court orders a lump sum payment for the support of multiple children, the obligated parent has the burden to modify his or her child support obligation as each child becomes emancipated or reaches the age of majority. Otherwise, the obligated parent must continue to pay the same lump sum support payment originally ordered until the last child is either emancipated or reaches the age of majority.

Moreover, a parent who must pay undivided child support for multiple children cannot unilaterally reduce his or her payments each time one of the children becomes emancipated or attains the age of majority, unless permitted by the original child support order. In the case before us, the child support order does not

authorize a proportionate reduction in the Appellee's obligation as each child reaches the age of majority or becomes emancipated. Therefore, the Appellee was required to pay $200 per month until the youngest child met the conditions in the August 18, 1983 order or until the court modified the support order. On remand, the trial court will determine the Appellee's liability for unpaid child support since December of 1981. The court will give the Appellee credit for the amount of child support he has paid to date, including those made pursuant to the August 18, 1983 order.

Finally, the Appellant argues that the trial court should not have canceled part of the past due child support amount. We agree. Court ordered child support payments become vested in the payee as they become due. Thus, our courts should not permit retroactive modification of a child support order, absent a party's showing of compelling circumstances. A party who wants to reduce his or her child support payments always has access to the courtroom. Upon proper application, the court has the discretion to decide whether its previous child support order should be changed to meet current conditions. Any modification should be prospective only and applicable from the date of the written modification order itself.

## IV

The trial court's award of $13,000 to the Appellant is reversed. This case is remanded to the Chinle Family Court. The family court will hold further proceedings consistent with this opinion.