OPINION

Maternal grandparents appeal from a Nav. R. Civ. P. Rule 12(b)(6) order of dismissal of a guardianship petition con-ceming A.M.K., who was a newborn infant when the guardianship petition was filed *195 and eleven months old by the time of the dismissal. We REVERSE.
I
A.M.K. is the child of Lianne Kayaani (Mother), an enrolled member of the Navajo Nation, and Colin Wylie (Father/Ap-pellee), a non-Indian citizen of Canada. Mother and Appellee were married at the time of the child’s conception but were separated at the time of her birth. Two days before the child’s birth on July 5, 2009, Mother had filed for and obtained an Emergency Protection Order against Ap-pellee, alleging verbal and emotional abuse. Mother passed away at childbirth and the protection order expired without the matter being heard.
Immediately following Mother’s passing, maternal grandparents Leo Kayaani and Bernice Mitchell (Appellants), enrolled members of the Navajo Nation, filed a Petition for a Domestic Abuse Protection Order (DAPO) against Appellee on behalf of A.M.K. and one other minor daughter of Mother[1] on July 6, 2009 under docket no. C H-FC-723-09. On July 7, 2009, Appellants further filed a Petition for Guardianship of A.M.K together with motions for immediate temporary custody and for a social services investigation under docket no. CH-FC-728-09. Both petitions were filed pro se on short forms provided by the Chinle court. All motions in both actions were granted ex parte pending hearing, and Appellants took custody of A.M.K.
On July 13, 2009, a Notice of Hearing was issued and served on the parties (including Social Services), setting a Pretrial Conference for September 9, 2009.
On July 15, 2009 after retaining counsel, Appellee filed, inter alia, a Petition for a Writ of Habeas Corpus which was docketed under CH-FC-728-09. On July 20, 2009 a habeas hearing was held, during which the court verbally consolidated the DAPO and guardianship matters and took testimony only on the issue of illegal custodial detention. Appellants’ newly retained counsel requested a continuance, but was denied. At the close of the hearing, the court verbally dismissed the DAPO action and ordered A.M.K. returned to Father. On July 23, 2009, the Court issued a written Order Granting Respondent Wylie’s Request for Return of Minor Child in which the court dismissed the DAPO action, vacated all related protection orders, denied the writ, vested legal and physical custody of the child in Father, ordered that “the guardianship action will not be dismissed at this time,” and promised a future more detailed decision. On July 29, Appellee moved to dismiss the guardianship matter. On September 11, 2009, the Court issued its Final Order Giving Legal Custody of Minor Child to Respondent Wylie explaining its dismissal of the DAPO action and grant of custody of the child to Appellee but took no action on Appellee’s motion to dismiss the guardianship. Appellants did not appeal the DAPO dismissal.
On August 20, 2009 Appellants retained new counsel who proceeded to file a flurry of motions in the guardianship matter, including motions for continuance of the pretrial conference, to vacate custody in Appellee, reinstate temporary custody in Appellants, for appointment of a guardian ad litem for A.M.K. and further submitted Mother’s medical records as exhibits. On October 2, 2009, Appellee filed his oppositions to Appellants motions.
On November 16, 2009, Appellants requested reinstatement of the guardianship action to the court’s active calendar after informing the Family Court that A.M.K. *196 had been taken to Canada. On November 20, 2009, following Appellee’s renewed filing of a Rule 12(b)(6) motion to dismiss, the court denied Appellants’ motion to vacate custody and ordered the submission of briefs specifically on why the court should not dismiss the case for failure to state a claim. On December 7, 2009, Ap-pellee filed his brief and on December 14, 2009 Appellants filed their brief with exhibits. Six months later, without a hearing, on June 8, 2010, the Family Court issued an Order to Dismiss Petition for Guardianship.
Appellants timely appeal. The opening brief, response and reply were all timely filed. On July 29, 2010, Appellants filed a Notice of Non-Filing of Transcript, informing this Court that a transcript is not necessary in this appeal. On September 2, 2010, Appellee filed a Notice of Need for Transcript. Oral argument was held on September 17, 2010 at the Chinle School District # 24 Board Room.
A.M.K. is presently fifteen months old and has resided in Canada for more than one year. As of the oral argument, no visitation has taken place between A.M.K. and maternal grandparents.
II
This Court will address two preliminary matters before turning to the fundamental issues. First, disposition of Appellee’s Notice of Need for Transcript filed more than 30 days following service of Appellants’ Notice of Non<-Filing of Transcript. Second, the scope of this appeal.
Transcript. The parties differ on the necessity for a transcript and the responsibilities of each party pursuant to Rule 9(b) of the Navajo Rules of Civil Appellate Procedure and our opinion in Tso v. Navajo Housing Authority, No. SC-CV-20-06, 6 Am. Tribal Law 793, 795 (Nav.Sup.Ct. August 16, 2006). At oral argument, the Court asked the parties if they would object if, in lieu of submission of the transcript, the Court listen to taped recordings of the July 20, 2009 habeas hearing as deemed necessary. The parties both agreed they had no objection, and the transcript issue was settled. We thereby need not address the procedural issues raised.
Scope of the Appeal. The scope of this appeal is more difficult to address. The only hearing in this matter was the July 20, 2009 habeas hearing following which the DAPO matter was dismissed and custody of A.M.K. given to Appellee. We note that both the DAPO and guardianship matters were verbally consolidated at that hearing. We further note that one of three causes raised in the guardianship petition is the existence of a restraining order. Finally, we note that Appellants did not appeal the DAPO dismissal. Ap-pellee argues that Appellants’ failure to appeal the DAPO dismissal and grant of custody is fatal to the appeal of the guardianship dismissal. We disagree. However, we believe that Appellants’ failure to appeal those matters significantly impacts the scope of this appeal.
Because the guardianship petition alleges “Restraining order taken against (Father) by Mother” as a custody claim, Appellants’ failure to appeal the DAPO dismissal results in waiver and cannot confer subject matter jurisdiction to this Court over the domestic abuse claim in the guardianship petition. See Mitchell v. Davis, 8 Nav. R. 542, 545, 5 Am. Tribal Law 434 (Nav.Sup.Ct.2004) (Court lacks jurisdiction over merits of final order that is untimely appealed). For whatever reason Appellants chose not to appeal the DAPO final order, the result is this appeal may not include arguments to overturn the DAPO dismissal and transfer custody on *197 the basis of the domestic abuse allegations that were part of that proceeding.
This Court has struggled to find some basis that would permit us to revisit the DAPO matter in keeping with our role as guardian of the matter before us, particularly when this matter concerns a child. See Smith v. Kasper, No. SC-CV-30-07, 8 Am. Tribal Law 347, 352 n. 2 (Nav.Sup.Ct. December 2, 2009) (The root of the Navajo value is based on moral responsibility and familial relationship (Icé )). We are unable to do so. We have long held that, pursuant to N.R.C.A.P. Rule 8, appeals must be timely filed. See Mitchell v. Davis, supra. We have previously explained that pursuant to Dine concepts of fundamental fairness, a litigant’s right to have a matter heard has to do with expectations. See Staff Relief, Inc. v. Polacca, 8 Nav. R. 49, 59, 2 Am. Tribal Law 512 (Nav.Sup.Ct.2000). A litigant is held to a high standard of personal responsibility. A litigant who neglects to file a timely appeal, especially without offering any compelling reason or in this case, any reason at all, cannot have any expectation that a matter will be heard.
We note that the Family Court vested custody in Appellee under both docket numbers when it addressed the DAPO matter. To the extent that custody claims unrelated to DAPO claims are raised in this appeal, the issue of A.M.K.’s custody is properly before this Court.
Ill
This Court has personal jurisdiction over A.M.K. by mutual agreement of the parties confirmed at oral argument,[2] and pursuant to the Navajo Nation Children’s Code at 9 N.N.C. § 1005(D)(2007) which provides, “[t]he Family Court may hear child custody matters involving Navajo children wherever they may arise.” It is the child’s status as a Navajo, and not her presence within the territory of the Navajo Nation that allows jurisdiction. Miles v. Chinle District Court, No. SC-CV-04-08, 7 Am. Tribal Law 608, 613 (Nav.Sup.Ct. February 21, 2008). Jurisdiction is also conferred under federal law which recognizes that tribal adjudications over tribal children who reside outside tribal territory must be given full faith and credit. Reservation status is not a requirement of jurisdiction because “[a] Tribe’s authority over its reservation or Indian country is incidental to its authority over its members.” Kaltag Tribal Council v. Jackson, 344 Fed.Appx. 324 (9th Cir.(Alaska) Aug. 28, 2009), cert. den., — U.S. -, 131 S.Ct. 66, 178 L.Ed.2d 22 (2010).
IV
Appellants assign the following appeal-able errors to the Family Court: (1) failing to afford a hearing; (2) raising the purported superior custody right of a Father above the best interest of the child standard; (3) failing to ascertain the best interest of the child subsequent to the award of custody; (4) failing to recognize the rights of the child and maternal relatives under Dine Fundamental Law; and (5) prejudicial delay in addressing the guardianship petition.
V
The Court reviews the trial court’s dismissal under Nav. R. Civ. P. Rule 12(b)(6) de novo with no deference given to the court’s conclusion. We as *198 sume Appellants’ factual allegations to be true for purposes of our review. Bennett v. Shirley, No. SC-CV-21-07, 7 Am. Tribal Law 595, 600 (Nav.Sup.Ct. November 29, 2007) citing Secatero v. Navajo Bd. of Election Supervisors, 6 Nav. R. 385, 389 (Nav.Sup.Ct.1991). Further, the Court reviews legal questions de novo. Green Tree Servicing, LLC v. Duncan, No. SC-CV-46-05, 7 Am. Tribal Law 633, 638 (Nav. Sup.Ct. August 18, 2008) Navajo Transport Services v. Schroeder, No. SC-CV-44-06, 7 Am. Tribal Law 516, 521 (Nav. Sup.Ct. April 30, 2007).
VI
Sufficiency of the Petition
A Rule 12(b)(6) motion tests the sufficiency of a complaint supplemented by no other pleadings. It is to be filed with or immediately prior to a responsive pleading. In this case, Appellee asserted that Appellant failed to state a claim for which relief could be granted. The motion was filed in July, 2009 and renewed several times without action by the Family Court until November 20, 2009 when the court sought briefs on why the petition should survive such a motion. Calling attention to the paucity of Navajo caselaw on Rule 12(b)(6) dismissals, the Family Court cites a slew of federal caselaw and also the Federal Civil Procedure Handbook in justifying its dismissal of this matter without a hearing. Citing a Window Rock district court case, a U.S. Supreme Court case, and a 7th Circuit case, the Family Court relied on principles generally applied in sufficiency reviews of civil complaints, such as the requirement for a “bare minimum discussion” of the theory of the claim, submission of any facts underlying the claim, and justification to dismiss when plaintiffs statements are eonclusory and contradicted by the complaint’s own exhibits or other documents. In addition, the court apparently considered Appellants’ December 14, 2009 brief as a supplemental complaint of some kind through which Appellants were expected to submit their discussion of the theory of the claims and facts underlying the claims.
We note that the pro se guardianship petition filed by Appellants pro se was provided by the court and is a short fill-in-the-blank form which sets aside only two lines to fill in a statement of the custody elaim(s), provides no space for supporting facts nor discussion, and permits no exhibits. The form permits only identifying information and a short statement of the claim to be filled in. The printed portions of the form then automatically requests temporary custody and a social services investigation. In the short space provided, Appellants provided the following short statements of their claims:
Restraining order made against (Father) by mother. Non-responsible and non-supportive. Father is a questionable U.S. citizen.
Given the very limited fill-in space on the form and the pro se nature of such filings, claims statements are very likely to be eonclusory, incomplete, and inartfully worded.
We find that the use of civil complaint sufficiency principles to a pro se guardianship petition provided by the court to pro se petitioners is inappropriate, and the court erred. We find that the “restraining order” against Appellee being in force when the petition was filed, the petition was sufficient on its face and we note that a habeas hearing was in fact held under both the guardianship and DAPO docket numbers. The court further erred by using an order for briefs as a vehicle for gathering additional information to supplement the complaint. We note that *199 the order invited argument on the sufficiency of the petition and should not have been relied on as a supplemental complaint. We find that the short form guardianship petition is plainly intended to expedite such filings and provide information to the court, with the parties expected to explain themselves at a later date. Application of the civil complaint sufficiency test would be inapposite to the short form’s format and intended use. We hold that, except in the most obvious cases where the stated claim(s) are insensible, the use of Rule 12(b)(6) dismissals on the basis of such short forms is inappropriate. Dismissal in this case was error.
We will take our analysis a little further due to other errors we have found in the Family Court’s reasoning. In particular, we examine the court’s understanding and application of the best interest of the child standard, the provision of timely and efficient justice, and its legal conclusions as to the status of family members involved in this case.
“Non-Responsible and Non-Supportive”
The Family Court interpreted “non-responsible and nonsupportive” in Appellants’ claim to mean that Appellants were asserting that Appellee was unable to care for the newborn. A review of the briefs plainly show that Appellants were addressing Appellee’s absence and nonsupport of the child while in the mother’s womb. Appellants provided the court with medical records[3] in which was noted, inter alia, that Appellee was absent and “not involved financially” in Mother’s pregnancy. The allegations go to neglect through abandonment of mother and unborn child and should have ensured survival of a Rule 12(b)(6) motion.
In our journey narratives, it is said that nilich’i (air or “breath of life”) enters the child at the moment of conception. Nilich’i produces the movement (hiná), the life, and eventually the growth of the fetus. When a traditional Navajo woman finds that she is pregnant, the expectant mother is said to relive the creation story as she prepares to bring forth into the world an earth boy or girl.[4] It is the parents’ belief that anything they think, say, or do will be heard by and affect the unborn child. The Blessing Way ceremony is performed for a woman both in pregnancy and in delivery.[5] The child, even the unborn child, occupies a space in Navajo culture that can best be described as holy or sacred, although neither of these words convey the child’s status accurately. The child is awqq t’áá’iidqq’hmq^ alive at conception and develops perfectly in the care of the mother. The umbilical cord, ííná bita’ nanit’i’, is the life line between the mother and unborn child. EXC v. Kayenta District Court, No. SC-CV-07-10, 9 Am. Tribal Law 176, 188, 2010 WL 3701060 (Nav.Sup.Ct. September 15, 2010).
Rights of All Family Members Under the Best Interest of the Child Standard
We note that the Family Court did acknowledge that there are established Na *200 vajo principles. For example, the court stated that “there are numerous published Navajo cases explaining the importance of Navajo identity and Navajo relationships. Non-Navajos cannot become a hadane and ignore these established principles.” June 8, 2010 dismissal order. However, the court then proceeded to ignore our established principles and applied “universal concepts” or concepts used outside the Navajo Nation in state and federal courts. Those “universal” concepts served as the court’s basis in finding that the rights of the father are superior and all controlling unless there is a showing of abuse and neglect; in permitting the permanent and unconditional separation of the child from her sibling and relatives; and in abandoning any role over the well-being of a Navajo child removed from the reservation by her nonmember father simply because the father is living. The court further failed to consider the family law of Canada which closely tracks our own fundamental principles in its subordination of the right of parents to the best interest of the child and emphasis on extended family.
The emphasis on extended family in both Navajo and Canadian law diverges markedly from the traditional Anglo-American nuclear vision. Under Navajo law, parenthood is not a rights-based exclusive status. “Navajo common law on the family extends beyond the nuclear family to the child’s grandparents, uncles, aunts, cousins and the clan relationships ... [t]he importance of his relatives to the Navaho can scarcely be exaggerated.” Davis v. Means, 7 Nav. R. 100, 103 (Nav. Sup.Ct.1994). Ensuring the child’s contact with the parentis) and extended families is a paramount duty of the Navajo courts. It bears repeating that the Navajo child belongs to more than just the parents. In re Interest of JJ.S., 4 Nav. R. 192 (W.R.Dist.Ct.1983). The child is said to “belong” to the mother’s clan. Lente v. Notah, 3 Nav. R. 72, 80 (Nav.Sup.Ct.1982). Maternal aunts are considered “mothers,” and both sets of grandparents are crucial vehicles for passing on knowledge of Navajo tradition.
We note that as early as 1980, Canadian provinces have enacted grandparent access laws based on the best interests of the child. See, e.g., R.S.B.C.1996 C. 128, S. 24; R.S.B.C.1996 C. 128, S. 35; R.SA1980, c. P-20, S. 32.1. Like Navajo, Canadian grandparent visitation rights focus more on the child’s needs than parental rights. We understand that Canadian easelaw recognizes the grandparents’ “right” to take part in the child’s life is a best-interest-of-the-ehild right which may be removed only in extreme circumstances.
It is important to recognize and apply Navajo beliefs toward children in Navajo court decisions. Alonzo v. Martine, 6 Nav. R. 395, 395-396 (Nav.Sup.Ct.1991). Our children are viewed as the future, ensuring the existence and survival of the Navajo people in perpetuity. Burbank v. Clarke, 7 Nav. R. 369, 371, 2 Am. Tribal Law 424 (Nav.Sup.Ct.1999).
Insofar as there are rights, they reside with the child. Our courts will “enforce the childrens” rights in custody and ... only incidentally provide for the rights of the parents, where they are in harmony with those of the children. Id. For example, in Gold,tooth, the Family Court stated:
In Navajo culture and tradition, children are not just the children of the parents but they are children of the clan. In particular, children are consider (sic) members of the mother’s clan. While that fact may be used as an element of preference in a child custody case, the court wants to point out that the primary consideration is the child’s strong relationship to members of an extended *201 family ... Therefore the court looks to that tradition and holds that it must consider the childrens’ place in the entire extended family in order to make a judgment based upon Navajo traditional law.
Id. supra at 225-226.
Our common law takes as a right that it must be known precisely from where one has originated. Davis v. Means, 7 Nav. R. 100, 103 (Nav.Sup.Ct.1994). “Knowing one’s point of origination ... is extremely important to the Navajo People, because only then will a person know which adoone’e (clan) and dine’e (people) the person is.” Those precepts are essential to a Navajo’s identity and must be known for Navajo religious ceremonies. One must know them to seek hozho (harmony and peace). When applied to a child, they are necessary for the child’s emotional, physical, and spiritual well-being. Id.
Under certain circumstances, a child’s interests to know her relatives and traditional culture might require that custody be awarded to someone other than the parent. Goldtooth v. Goldtooth, 3 Nav. R. 223, 227 (W.R.Dist.Ct.1982). In Goldtooth, the family court discussed at length the outcome of a custody dispute from a court in Quebec, Canada, involving a child who had been cared for by his Inuit grandparents pursuant to a traditional Native adoption without the father’s consent. The court granted legal custody to the mother, physical custody to the grandparents, and visitation to the father in order to ensure the child’s continued contact with the Inuit relatives and culture. See Deer v. Okpik, 4 Canadian Native L. Rep. 93 (Cour Supéri-eure de Quebec 1980) (explaining that tribal judges “will look to the welfare of the child before the rights of a natural parent”).
The general rule is that the court must always act as the parent of the child and must act in the best interest of the child, especially in cases where a change of custody is requested. Barber v. Barber, 5 Nav. R. 9 (Nav.Ct.App.1984). Navajos do not view children as property or possessions, but value them as individuals in a community. Alonzo, supra at 395. The court must seek to serve the interests of the child as being above the interests of the adults, and the dominant principle to guide the courts is always the best interest of the child. Goldtooth, supra at 224. In Lente v. Notah, the Navajo Court of Appeals set forth general guidelines for a best interest of the child analysis, to be applied on a case-by-case basis, that holds good today. See 3 Nav. R. 72, 78-79 (Nav.Ct.App.1982). The court’s guardianship role requires that it retain jurisdiction over a matter until the safety, well-being, and the above best-interest-of-the-ehild factors pertaining to the child’s meaningful contact with her relatives and culture are fully ascertained.
We note with approval how the Chinle Family Court has approached a, similar guardianship matter concerning a guardianship petition filed by maternal relatives on behalf of children with a deceased mother and a living father. In that case, the court granted custody to the father in the absence of abuse and neglect but insisted on court supervised extended visitations so that the children would know their Navajo relatives and traditions. Because the father did not permit visitation with the relatives and there was no indication that the children were being taught about their traditions and clan relationships, the court ordered a home study and Social Services investigation to monitor both visitation and the welfare of the children. In re A.M.C., 8 Nav. R. 825, 828 (Chinle Dist. Ct.2004). When the Social *202 Services report raised concerns, the Court later required more conditions of the father. In re A.M.C., 8 Nav. R. 874, 884 (Chinle Dist. Ct.2005). In the A.M.C. cases, the court did not treat the grant of custody to a parent as ending the role of the court with regard to continued and meaningful contact between the relatives and child. Applying the best interest of the child standard, the court planned for meaningful visitation following the grant of custody. The A.M.C. cases illustrate the thoroughness which a court needs to approach its affirmative responsibility under the best interest of the child standard. We note that visitation to the non-custodial parent is a given when nuclear family members contest custody in our courts. Due to the emphasis on extended family under Navajo Nation law, we find that custodial contests involving extended family require the same treatment, whether or not visitation has been specifically requested.
At the time it dismissed this case, the Family Court was fully aware that the ehild had been removed from the country and that Appellants had not been able to have any contact with the child nor even know her whereabouts for over one year. The Family Court was aware of Appellee’s non-support of Mother during her pregnancy. In addition, there is no indication that Appellee took on any responsibilities as a hadane toward Mother’s other minor child nor adopted that child, to whom he was a stepfather during their marriage. There is no indication that Appellee will ensure that A.M.K. will ever know her sibling, her Navajo culture, nor her relatives. Finally, Appellee does not deny that he has not been taking care of A.M.K., nor that A.M.K. is presently in the care of other people and her whereabouts in Canada are unknown to Appellants. Under these circumstances, the Family Court should have taken steps to ensure that A.M.K. is supported, safe, and that meaningful contact with her sibling, relatives, culture, and people will occur. The court erred.
“Questionable U.S. Citizen”
In their petition, Appellants claimed that Appellee was “a questionable U.S. Citizen.” The Family Court found this claim insufficient, at first basing its finding on the apparent emphasis on Appellee’s immigration status. However, Appellants’ December 14, 2009 brief submitted to the Family Court explained that it was not Appellee’s immigration status that concerned Appellants, but his character as measured in Appellee’s dealings with immigration authorities and border patrol. Appellants believe that Appellee’s immigration dealings cast serious doubt on his veracity and upright character. When made aware of these dealings in detail, the Family Court discounted their relevance due to their having occurred in the past and, even were they to reoccur, would not impact a custodial finding. We strongly disagree. If proven to be true, the allegations raised by Appellant significantly impacts both Appellee’s fitness to parent and provide reliable assurances that the best interest of A.M.K. will be followed through.
Appellee does not dispute his record of lying to U.S. immigration authorities as he repeatedly sought illegal entry into the U.S., was apprehended, and deported over a fifteen year period. By Appellee’s own admission, his marriage to Mother may have been set up solely for immigration purposes in order to evade immigration laws. In 2007, he was apprehended at the border in a pickup earning $10,000, one-fifth of which was forfeited. We take judicial notice that $10,000 is within the cap in cash amounts that may *203 be legally brought into the United States. As Appellee drew a very limited salary as a reservation schoolteacher and the amount of $10,000 is within the cap on the cash amount that can be brought into the country, further inquiry into the circumstances surrounding the apprehension and forfeiture was warranted. However, the Family Court dismissed all of the above information as irrelevant to a grant of custody and bearing not at all on Appel-lee’s truthfulness to the court and future conduct. The court erred.
Finally, without informing the court, Appellee sought and apparently obtained a name change and different Canadian Social Insurance Number during the pendency of the proceedings. Appellants have asked Appellee if A.M.K. will now also have a different name, but have received no response. Appellants do not presently know A.M.K.’s whereabouts, and in future may not even know her name. When made aware of these issues, the court should have, yet did not obtain any clarification of why the change was obtained, what Appellee’s future name will be, and what the implications are on the future name and whereabouts of A.M.K. The court erred.
Delay in the Proceedings
The Family Court dismissed the case on June 8, 2010 without affording a hearing, almost one year after the petition was filed on July 7, 2009. In the meantime, the child had been removed from the country to whereabouts unknown, Appellants have retained two different counsel, and neither Appellants, A.M.K.’s sibling, nor any of her Navajo relatives have been able to have any contact with the child since her removal despite counsel’s efforts. The court justifies the delay by pointing to defects in the petition which she believed prevented remedies by the court. We disagree. It is beyond dispute that the delay was highly prejudicial to Appellants. For many unnecessary months the child was growing and forming attachments with caregivers without any contact with Appellants. The process was put on hold. Had the court issued its dismissal within a reasonable time of Appellee’s motion on July 29, 2009, Appellants would have had the opportunity either to cure through a new petition or to file an appeal before the child was removed from the country in October or November of that year. In addition, any sense of closure through final decision in a life altering situation for the parties has been out of reach.
A Navajo Nation court is not relieved of its responsibility to advance cases during reasonable time frames, at the very least so that parties may avoid financial and emotional burdens of unnecessarily extended litigation, and may swiftly pursue objections, amendments to the judgments, or their appellate options. We find the delay in this case of many months clearly exceeded any reasonable time in which to bring the guardianship petition to completion, and the Family Court failed in its duty to achieve a prompt, efficient and fair resolution of disputes as required under Canon Three of the Navajo Nation Code of Judicial Conduct. In addition, the Navajo Rules of Civil Procedure is replete with provisions emphasizing diligence on the part of the court.[6] The court abused its discretion. While there are no specific time limits for final decision set forth in our court rules that would make the court’s delay reversible error per se, the great prejudice shown in this case arising *204 from the lengthy delay of almost one year in rendering a final decision on the basis of the sufficiency of the petition justifies reversal.
VIII
CONCLUSION
The Chinle Family Court’s dismissal is REVERSED.
This ease is REMANDED. In light of the length of time the relatives have not seen the child and the child’s young age, the Chinle Family Court shall conduct expedited further proceedings and make additional findings consistent with this opinion. Dated this 8th day of October, 2010.

. not fathered by Appellee; Appellee has not adopted this stepdaughter.

. held on September 17, 2010 at the Chinle School District # 24 Board Room, and duly recorded (at which Appellee agreed that the Navajo Nation courts have concurrent jurisdiction over this matter with the courts of Canada).

. attached as exhibits to Appellants’ September 24, 2009 Motion to Vacate Temporary Custody Order

. When there is a newborn, that newborn is Nohookáá Diyin Dine’é, an “earth surface'' person.

.Wilson, UM, Traditional child bearing practices among Indians, Presentation to the 3rd Annual Conference of the American Indian Nurses Association, Yakima, WA: April 1978, 1-16; Milligan, BC (1984) Nursing care and beliefs of expectant Navajo women, American Indian Quarterly VIII(2):83-97.

. See e.g., Nav. R. Civ. P. Rule 40 permits consolidation of cases to avoid unnecessary costs or delay; Rule 58 requires the court clerk to "forward a judgment to the parties immediately after entry.” (emphasis added).